**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**

S.L., A MINOR, BY AND THROUGH
HER PARENT AND LEGAL GUARDIAN D.L.

        Plaintiff,

v.                             CIVIL ACTION NO. 3:18-CV-162
                                  (Groh)

CITY HOSPITAL, INC. d/b/a BERKELEY MEDICAL CENTER,
A subsidiary of WEST VIRGINIA UNIVERSITY
HOSPITALS-EAST, INC., d/b/a
WV UNIVERSITY HEALTHCARE,

        Defendant.

**DEFENDANT CITY HOSPITAL, INC. d/b/a BERKELEY MEDICAL CENTER, A**
**SUBSIDIARY OF WEST VIRGINIA UNIVERSITY HOSPITALS-EAST, INC. d/b/a WV**
**UNIVERSITY HEALTHCARE'S REPLY TO PLAINTIFF'S RESPONSE TO**
**<u>DEFENDANT'S MOTION TO DISMISS</u>**

    **NOW COMES** the Defendant, City Hospital, Inc. d/b/a Berkeley Medical Center, a

subsidiary of West Virginia University Hospitals-East, Inc. d/b/a WV University Healthcare

("BMC"), by and through its counsel, and pursuant to Rule 12(b)(6) of the Federal Rules of Civil

Procedure, states as follows in Reply to Plaintiff's Response to Defendant's Motion to Dismiss.

**I.**    **<u>PRELIMINARY STATEMENT</u>**

    Plaintiff's Response lays bare the inadequacies that precipitated Defendant's Motion to

Dismiss. Plaintiff's Response leaps well beyond the "well-pleaded factual allegations" that

*Ashcroft* requires the Court to take as true, *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937,

1940–41, 173 L. Ed. 2d 868 (2009), and provides only conclusory descriptions of events, based

on assumptions about medical staff's[1] thought processes and the standard of care, to prove her theory of the case. *Twombly* requires that Plaintiff do more than present "legal conclusion[s] couched as a factual allegation[s]," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56, 127 S. Ct. 1955, 1964–65, 167 L. Ed. 2d 929 (2007), and because Plaintiff cannot, the court is not obliged to accept those facts as true.

Plaintiff's First Amended Complaint must be dismissed because well-settled law dictates that the Medical Professional Liability Act ("MPLA") applies to the facts presented and Plaintiff has not pled facts to support the claim that the medical decisions at issue resulted from disability discrimination such that there is a causal connection between the disability and the alleged discrimination or that Plaintiff was denied accommodations to permit meaningful access to services.

## II.   ARGUMENT

### A.   The MPLA Applies.

### 1.   The Supremacy Clause does not prevent application of the MPLA. Plaintiff's failure to plead the MPLA must result in dismissal.

Plaintiff argues that her failure to comply with the MPLA should not result in dismissal of her claim because the MPLA is inapplicable to this action. Plaintiff argues that the MPLA does not apply because 1) such application to an action under Title III of the Americans with Disabilities Act, 42 U.S.C. § 1218 *et seq*. ("ADA") and Section 504 of the Rehabilitation Act, 29 U.S.C. § 794, would violate the Supremacy Clause; and 2) the MPLA does not apply to Plaintiff's battery and intentional infliction of emotional distress claims.

---

[1] BMC reiterates that decisions regarding the practice of medicine, including but not limited to, the administration of medication, are not necessarily made by BMC employees, but may be made by non-employee physicians for whom BMC is not liable pursuant to W. Va. Code § 55-7B-9(g). For the purposes of this Motion to Dismiss and Memorandum of Law, BMC will use the general term "medical staff," without waiving the right to dispute or clarify any relevant physician's employment status with BMC at a later time if necessary.

Both of Plaintiff's arguments are incorrect based upon authoritative precedent. Firstly, the MPLA applies to federal causes of action. Plaintiff cites three cases out of the federal districts of West Virginia to support the argument that the MPLA cannot apply to a federal action, and Defendant remains flummoxed by Plaintiff's interpretation of the law.

In *Gaylor v. Dagher,* the court confirmed that prisoner-plaintiff's allegations of deliberate indifference to serious medical need were separate and apart from his claims of medical negligence and medical malpractice and that "[t]o the extent that Plaintiff has alleged a negligence or medical malpractice claim against Defendant, however, he is required to comply with the pre-filing provision of the MPLA. *Gaylor v. Dagher*, No. 2:10-CV-00258, 2011 WL 482834, at *11 (S.D.W. Va. Jan. 14, 2011) (unreported), *report and recommendation adopted,* No. 2:10-CV-00258, 2011 WL 482833 (S.D.W. Va. Feb. 7, 2011), *vacated* (Feb. 25, 2011), and *report and recommendation adopted*, No. 2:10-CV-00258, 2011 WL 3047747 (S.D.W. Va. July 25, 2011). The fact that the prisoner-plaintiff alleged serious indifference to a medical need pursuant to the Eighth Amendment was a separate, federal question that did not require pleading under the MPLA. *Id.* In no way does such a holding stand for the proposition that the MPLA has no place in a federal question case.

Similarly, in *Skaggs v. Clark*, the prisoner-plaintiff made a claim against the prison's contracted medical doctor under the Eighth Amendment for "deliberate indifference to a serious medical need . . . ." *Skaggs v. Clark,* No. CIV.A. 3:13-3293, 2015 WL 269154, at *10 (S.D.W. Va. Jan. 21, 2015) (unreported). Plaintiff did not claim "negligence or medical malpractice," and had he done so, "he [would have been] required to comply with the pre-filing provision of the MPLA." *Id.* Deliberate indifference to a serious medical need is not medical negligence or malpractice and because Skaggs pled facts supporting only the allegation of deliberate

indifference under the 8th Amendment, solely a federal question, he was not required to comply with the requirements of the MPLA. *Id.* at 15.

In Plaintiff's discussion of *Gordon v. Tygart Valley Regional Jail*, Plaintiff again misstates the court's analysis. The court does not "analyze the plaintiff's Americans with Disabilities Act claims without reference to the MPLA," (Pl. Resp. p. 5), as asserted by the Plaintiff. On the contrary, the court repeated the theme defined in both *Gaylor* and *Skaggs*: "To the extent that the plaintiff is seeking to establish a medical negligence claim, he must comply with West Virginia law . . . W. Va. Code § 55–7B–3." *Gordon v. Tygart Valley Reg'l Jail*, No. 3:12-CV-34, 2013 WL 786480, at *9 (N.D.W. Va. Feb. 4, 2013) (unreported), *report and recommendation adopted*, No. 3:12-CV-34, 2013 WL 786471 (N.D.W. Va. Mar. 1, 2013). The *Gordon* court noted that while the plaintiff-prisoner complained that he was subject to "neglect, abuse, intimidation and humiliation because of his disability," *Id.* at *10, he, "[i]n essence . . . is making a claim of deliberate indifference to his medical needs, or a claim of malpractice, neither of which states a claim under the ADA." *Id. at *12.*

The *Gordon* opinion, which was adopted by this Court, cites a number of cases which relate to the nexus between the ADA and medical malpractice, noting, "[c]ourts routinely dismiss ADA suits by disabled inmates that allege inadequate medical treatment, but do not allege that the inmate was treated differently because of his or her disability." *Id.* at 11. The court also cites the unequivocal statement from the *Stanley* court that "Courts that have considered the issue have found that § 55–7B–6 is 'substantive' and applies to actions brought in federal court." *Stanley v. United States*, 321 F. Supp. 2d 805, 807 (N.D.W. Va. 2004).

In *Stanley*, the plaintiff argued that the Federal Tort Claims Act's pre-filing requirements conflicted with the MPLA's such that the MPLA should be trumped by the federal law. The court rejected this argument, stating:

> [T]he West Virginia pre-filing requirement is 'substantive.' Further, there is no conflict to be resolved between the federal and state pre-filing requirements. Although § 55–7B–6 is more demanding than 28 U.S.C. § 2675(a) and its implementing regulations, there is nothing to prevent a plaintiff from complying with both requirements.

*Id.* at 808–09.

To suggest that Plaintiff's ADA claim is solely a federal question and, therefore, the MPLA cannot apply, is patently inaccurate and unsupported by decisions of West Virginia's federal courts. Well-settled law provides that the MPLA applies to cases brought in federal court, inclusive of cases brought pursuant to the ADA.

Plaintiff will argue in response that, like *Skaggs* and *Gaylor*, she is bringing a cause of action that arises solely under federal law and that she is not bringing a medical negligence claim and therefore the MPLA is not applicable. This argument cannot stand. The core of the allegations Plaintiff brings against BMC is the treatment furnished, or which should have been furnished, to her, by medical providers at a hospital, which fits squarely into the MPLA's definition of health care.[2] W. Va. Code § 55-7B-2(e)(2).

**2.     Authoritative case law requires the application of the MPLA to battery and intentional infliction of emotional distress and Plaintiff requires an expert to testify as to BMC's alleged failure to meet the standard of care.**

Plaintiff argues that the MPLA should not apply to her action for battery and intentional infliction of emotional distress ("IIED"). Plaintiff confuses the issues here by using the exception for <u>when</u> an expert is not needed *in* an MPLA action to argue that the MPLA does not apply to

---

[2] *See also* Def's. MOL in Support of MTD p.4.

the intentional torts of battery and IIED. Plaintiff asserts that such claims fall under the exception contained in the MPLA, for claims that are "based upon a well-established legal theory of liability which does not require expert testimony supporting a breach of the applicable standard of care." W. Va. Code § 55-7B-6(c).

To clarify Defendant's position, the MPLA unequivocally applies to intentional torts that occur when health care services are rendered or should be rendered: "The West Virginia Legislature's definition of medical professional liability, found in West Virginia Code § 55–7B–2(i), includes liability for damages resulting from the death or injury of a person for *any* tort based upon health care services rendered or which should have been rendered." *Gray v. Mena,* 218 W. Va. 564, 569, 625 S.E.2d 326, 331 (2005). Plaintiff's Amended Complaint alleges that she was denied the treatment modality that she requested, Am. Compl. ¶¶ 42-43; that she was forced to undergo medical treatment despite withdrawing consent, *Id.* ¶ 51; and that she was pushed to the floor and forcibly restrained by BMC staff members. Pl's Resp. P. 6. These claims fall squarely within the MPLA's definition of health care and case law that has clarified the issue of liability for *any* tort based on health care services rendered or which should have been rendered.

Plaintiff argues that the problematic nature of this battery and emotional distress is so clearly within the understanding of lay jurors that expert testimony is not necessary. *Id.* Plaintiff cites *Farley v. Shook* as illustrative of her point; however, that case regards the interpretation of the exception to the expert requirement within the MPLA, specifically that testimony from a medical expert is not needed to prove medical negligence in certain cases:

> [I]n medical malpractice cases where lack of care or want of skill is so gross as to be apparent, or the alleged breach relates to noncomplex matters of diagnosis and treatment within the understanding of lay jurors by resort to common knowledge and

> experience, failure to present expert testimony on the accepted standard of care and degree of skill under such circumstances is not fatal to a plaintiff's prima facie showing of negligence.

*Farley v. Shook*, 218 W. Va. 680, 685, 629 S.E.2d 739, 744 (2006).

The section of the MPLA that Plaintiff invokes in an attempt to exempt herself from the MPLA is only applicable to medical malpractice actions where the lack of skill or care is "so gross as to be apparent" with respect to "noncomplex matters of *diagnosis or treatment*." *Id.* (emphasis added). The exception to the expert rule does not center on the question of whether a lay jury would understand whether Plaintiff was battered and caused emotional distress. It centers on whether it is within a lay jury's common knowledge to determine if BMC's actions met the standard of care with respect to the treatment of a thirteen-year-old child afflicted with Autism, Attention Deficit Hyperactivity Disorder, mild intellectual disability, and anxiety disorder who required stitches as the result of a foot injury. Am. Compl. ¶¶ 13, 15, 22.

Case law on this point requires that Plaintiff retain a medical expert to testify as to the standard of care that BMC staff should have met when providing care, or refusing to provide care, to Plaintiff. The jury is not "'competent from its own experience to determine and apply a reasonable care standard'" with respect to the treatment that is necessary and appropriate for a patient such as Plaintiff, *Banfi v. Am. Hosp. for Rehab.,* 207 W. Va. 135, 141, 529 S.E.2d 600, 606 (2000), nor is the question of BMC's conduct "as blatant as a 'fly floating in a bowl of buttermilk' so that all mankind knows that such things are not done absent negligence." *Id.* (citing *Murphy v. Schwartz,* 739 S.W.2d 777, 778 (Tenn. Ct. App.1986)).

The standard of care for a child with Plaintiff's conditions must be identified by a physician who is qualified under the MPLA to provide such expert testimony. Plaintiff's suggestion that expert testimony is not necessary on her battery and intentional infliction of

emotional distress claims is misplaced. The expert exception she invokes applies only to medical experts involved in medical malpractice claims, and even then, "[t]his exception is not easily invoked, as a plaintiff seeking to do so must overcome the general presumption in West Virginia medical malpractice law that negligence or want of professional skill can be proved only by expert witnesses." *Lancaster v. USP Hazelton*, 742 F. App'x 724, 726 (4th Cir. 2018). Furthermore, even if Plaintiff availed herself of the MPLA's exception to the certificate of merit requirement because the medical claims at issue are within the common knowledge of a jury, such exemption does not remove her claim from the realm of the MPLA entirely. Plaintiff would still be required to comply with the other pre-suit elements of the MPLA, i.e., providing a notice of claim and giving the Defendant an opportunity to demand pre-suit mediation. W. Va. Code § 55–7B–6(b).

The MPLA applies to Plaintiff's action as she has brought forth claims related to health care that was rendered or should have been rendered. Furthermore, the claims at issue are not such that the Plaintiff may avail herself of the exception to the medical expert witness requirement. Plaintiff's Amended Complaint should be dismissed and Plaintiff should be required to re-file in accordance with the requirements of the MPLA.

**3.     Plaintiff's failure to comply with the MPLA is directly Related to her Failure to Make a Causal Link between the Disability and the Discrimination.**

As Defendant noted in its Memorandum of Law, Plaintiff has failed to meet the second element necessary to survive a motion to dismiss a Title III claim: "[to] survive a motion to dismiss, Title III requires a plaintiff to plead the following elements: (1) the plaintiff was disabled within the meaning of the ADA, **(2) the plaintiff was discriminated against on the basis of that disability,** and (3) the defendant owns, leases, or leases to or operates a place of public accommodation." *Hernandez v. Cty. of Monterey*, 70 F. Supp. 3d 963, 972 (N.D. Cal.

2014) (emphasis added); *see also* § 4:200, Motions to Dismiss, 1 Americans with Disab.: Pract. & Compliance Manual § 4:200.

Plaintiff responds that she not only successfully linked the disability with the alleged discrimination, she pled facts to support that BMC failed to provide reasonable accommodations to allow Plaintiff to benefit from BMC's services when it refused to provide the requested treatment modalities. Plaintiff's failure to causally link the disability to the alleged discrimination and to successfully plead the failure to accommodate element is informed by the fact that she did not retain an expert witness to opine as to the standard of care. As it stands, Plaintiff can only make conclusory assumptions that "BMC's conduct was the result of S.L.'s actual or perceived disabilities," Pl's Resp. p. 18, and that "BMC's decision not to provide accommodation was based not in medical judgment but rather a nurse's arbitrary determination that she did not have time to administer them." *Id.* at 10.

Plaintiff argues that her Amended Complaint should be permitted to move forward through discovery "[t]o the extent that Defendant plans on advancing the startling argument" that it would have treated a "nondisabled thirteen-year-old" in the same manner that it treated Plaintiff. *Id.* It is not necessary that this case move to discovery to determine the answer to that question. Had Plaintiff complied with the MPLA, her medical expert would have been capable of opining as to that very issue.

Plaintiff's case is similar to *Gordon,* in that, Gordon complained that the prison and its nurse violated the ADA by failing to accommodate the Plaintiff during a psychotic episode. *Gordon*, *2013 WL 786480* at *1, *report and recommendation adopted*, No. 3:12-CV-34, 2013 WL 786471 (N.D.W. Va. Mar. 1, 2013). Plaintiff fails in the same way as Gordon failed, to connect the treatment that she did or did not receive at BMC to her disability:

> The plaintiff does not assert, much less establish, the standard of care for the diagnosis or treatment of a psychotic episode. Under the circumstances of this case, plaintiff would be required to produce the medical opinion of a qualified health care provider in order to raise any genuine issue of material fact with respect to the defendant(s)' breach of the duty of care.

*Id.* at 10.

Here, the court highlights the unique relationship between West Virginia's MPLA and the ADA. Sufficiently pleading an ADA claim is part and parcel of proving that the care rendered, or not, fell short of the standard. As Plaintiff identified in her brief, the *Gordon* court highlights that a plaintiff-prisoner[3] may successfully avoid dismissal if the complaint "alleges that he or she has been denied services that might have been provided to other prisoners." *Gordon*, 2013 WL 786480 at *12, *report and recommendation adopted*, No. 3:12-CV-34, 2013 WL 786471 (N.D.W. Va. Mar. 1, 2013).

**B.  Conclusory statements regarding alleged discrimination and failure to accommodate requests for modifications are insufficient to survive a motion to Dismiss.**

**1.  Plaintiff's Response fails to causally connect the treatment received with the alleged disability.**

Plaintiff's Response cites numerous cases in an effort to prove that the ADA and Rehabilitation Act may be applied in the context of discriminatory treatment in the provision of health care services. Defendant does not disagree with this proposition. However, the cases Plaintiff cites stand for the requirement that a plaintiff must plead a causal connection between the alleged discrimination and the disability with more than argumentative conclusions.

---

[3] The inquiry under Title III as to whether an individual was "discriminated against on the basis of disability" is analogous to the "otherwise qualified" and "by reason of" analysis that is applied to a Title II claim . . . Thus, a plaintiff seeking relief under Title III must also **make a causal connection between the alleged discrimination and the individual's disability**. *Bowers v. Nat'l Collegiate Athletic Ass'n*, 118 F. Supp. 2d 494, 517 (D.N.J. 2000), *opinion amended on reargument,* 130 F. Supp. 2d 610 (D.N.J. 2001) (citation omitted) (emphasis added).

In *Asselin v. Shawnee Mission Med. Ctr., Inc.,* 894 F. Supp. 1479, 1486 (D. Kan. 1995), the court determined that, in consideration of plaintiff's *pro se* status, he pled enough facts to survive a motion to dismiss based on a violation of the ADA, but failed to meet the threshold for a claim under the Rehabilitation Act because "Plaintiff also must allege, however, that defendants denied him the benefits of treatment at SMMC 'solely by reason of his handicap.' 29 U.S.C. § 794. Although plaintiff's status as a [sic] epileptic is central to his claim, he does not claim that defendants denied him any aspect of treatment *because* of his handicap, nor do his allegations yield any reasonable inferences to this effect. Therefore plaintiff has not pleaded a *prima facie* case under the Rehabilitation Act, and that statute affords him no basis for the exercise of federal jurisdiction."[4]

In *Kiman,* the First Circuit highlighted the need for a plaintiff complaining of discrimination in the medical context to do more than simply make conclusive statements of discrimination:

> Kiman presents no evidence, beyond his conclusory arguments, that the defendants' medical treatment decisions violated Title II of the ADA. When the decision being challenged is "simply a reasoned medical judgment with which the patient disagreed," it is more appropriate for the patient to turn to "state medical malpractice law, not [the ADA]."

---

[4] In that same vein, Plaintiff cites a series of cases that are entirely distinguishable from her own in that, the plaintiffs successfully proved discrimination in the medical context by identifying a policy, unsupported by any objective medical evidence, that treated disabled patients differently: In *Bragdon v. Abbott,* the dentist had a policy of conducting procedures only on HIV positive patients in a hospital, instead of the dental office, and the alleged discrimination could be logically connected to the plaintiff's disability because the dentist "failed to present any objective, medical evidence showing that treating respondent in a hospital would be safer or more efficient in preventing HIV transmission than treatment in a well-equipped dental office. *Bragdon v. Abbott,* 524 U.S. 624, 651, 118 S. Ct. 2196, 2211, 141 L. Ed. 2d 540 (1998); *see also Andrews v. Rauner*, No. 3:18-CV-1101, 2018 WL 3748401, at *5 (C.D. Ill. Aug. 6, 2018) (unreported) (ruling that complaint could withstand motion to dismiss because plaintiff provided evidence of policy allowing outside hospitalization of physically, but not mentally, ill patients and that solitary confinement denied disabled inmate benefits of prison service and programs); *see also McNally v. Prison Health Servs.,* 46 F. Supp. 2d 49, 58 (D. Me. 1999) (refusing to grant summary judgment based on evidence that prison had a completely different policy with no medical basis for HIV positive prisoners that served to delay access to medication).

*Kiman v. New Hampshire Dep't of Corr.*, 451 F.3d 274, 285 (1st Cir. 2006).

The *Kiman* court's attention to the difference between a "reasoned medical judgment" and a refusal to treat a patient on the basis of his or her disability is important. The First Circuit determined that the "defendants' decisions regarding the diagnosis and treatment of Kiman's ALS," was a "medical 'judgment' subject to differing opinion," while the prison staff's outright refusal to provide his own prescription medication was an "outright denial of medical services," potentially in violation of Title II of the ADA. *Id.* at 287.[5]

The differences between these cases and the present case are precisely what require dismissal of Plaintiff's Amended Complaint. Plaintiff has not connected her disability with the alleged discrimination, in part because she has failed to provide facts indicating that there was no medical basis for the care rendered by BMC's staff. Plaintiff cannot meet this requirement at this stage of the proceedings because, like the plaintiff in *Gordon,* she has no legitimate basis upon which to argue for alternative treatment.

## 2.     Plaintiff did not adequately plead failure to provide reasonable accommodations.

Plaintiff responds that her Amended Complaint is not a "freestanding complaint for inadequate medical care," but instead a claim for failure to accommodate, which unlawfully prevented Plaintiff from benefitting from "the same medical treatment offered to others." Pls. Resp. p. 10.

Plaintiff must prove that her request for an accommodation was reasonable, *Mannick v. Kaiser Found. Health Plan, Inc.,* No. C 03-5905 PJH, 2006 WL 2168877, at *12 (N.D. Cal. July 31, 2006) (unreported), and she cannot do so without resorting to the expert opinion of a medical

---

[5] Similarly the court in *McKissick* ruled that plaintiff pled enough facts to survive a motion to dismiss when it determined that corrections officers engaged in neither medical judgment nor medical negligence when they outright denied him the right to medical services by refusing to provide him his own prescription medication. *McKissick v. Cty. of York*, No. CIV.A.1:09-CV-01840, 2010 WL 1930132, at *7 (M.D. Pa. Mar. 19, 2010) (unreported), *report and recommendation adopted,* No. CIV.A. 1:09-CV-1840, 2010 WL 1930144 (M.D. Pa. May 13, 2010).

professional. The accommodation Plaintiff sought was a specific modality of treatment, and the burden rests upon Plaintiff to prove that it was reasonable, with more than assumptions about the costs and staff resources that providing such accommodations would have required. Am. Comp. ¶ 91-93. Plaintiff cites no case law to support the proposition that a reasonable accommodation constitutes permitting a patient to demand a specific modality of treatment. Without such legal or factual support, Plaintiff has failed to sufficiently allege that Defendant's treatment failed to reasonably accommodate patient.

## III.    CONCLUSION

Plaintiff's Amended Complaint must be dismissed because she failed to comply with the MPLA in bringing an action that, at its core, centers on medical treatment that was, or should have been, rendered. Furthermore, Plaintiff fails to sufficiently plead a claim for violation of the ADA or the Rehabilitation Act because she fails to causally connect her disability with the allegedly discriminatory conduct, nor does she successfully plead failure to offer reasonable accommodations. Plaintiff cannot establish a relationship between BMC's allegedly discriminatory treatment of Plaintiff and her disability and conflates matters of medical judgment with a disabled person's right to demand reasonable accommodations. The treatment Plaintiff required was informed entirely by the medical judgment of the medical providers who tended to her. Because Plaintiff has not pled necessary elements under either state or federal law, her claim must be dismissed.

WHEREFORE, pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendant BMC respectfully requests that this Honorable Court dismiss Plaintiff's First Amended Complaint for failure to state a claim upon which relief may be granted and that this Court grant any such other and further relief as the Court deems appropriate.

Respectfully submitted this 21st day of December, 2018.

**CITY HOSPITAL, INC. d/b/a BERKELEY MEDICAL CENTER, A subsidiary of WEST VIRGINIA UNIVERSITY HOSPITALS-EAST, INC., d/b/a WV UNIVERSITY HEALTHCARE**

**By Counsel**

**/s/** Joshua K. Boggs

Christine S. Vaglienti (W. Va. State Bar ID #4987)
Joshua K. Boggs (W. Va. State Bar ID #10096)
Lauren T. Krupica (W. Va. State Bar ID #11719)
**WEST VIRGINIA UNITED HEALTH SYSTEM, INC.**
West Virginia University Hospitals, Inc.
1238 Suncrest Towne Centre Drive
Morgantown, West Virginia  26505
Telephone: 304/598-4070
Facsimile:  304/598-9888
vaglientic@wvumedicine.org
joshua.boggs@wvumedicine.org
lauren.twiggkrupica@wvumedicine.org

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**

**S.L., A MINOR, BY AND THROUGH
HER PARENT AND LEGAL GUARDIAN D.L.**

       **Plaintiff,**

**v.**                                      **CIVIL ACTION NO. 3:18-CV-162
(Groh)**

**CITY HOSPITAL, INC. d/b/a BERKELEY MEDICAL CENTER,
A subsidiary of WEST VIRGINIA UNIVERSITY
HOSPITALS-EAST, INC., d/b/a
WV UNIVERSITY HEALTHCARE,**

       **Defendant.**

## CERTIFICATE OF SERVICE

     I, Joshua K. Boggs, do hereby certify that I have *electronically filed* and caused to be served this 21st day of December, 2018, the foregoing "**DEFENDANT CITY HOSPITAL, INC. d/b/a BERKELEY MEDICAL CENTER, A SUBSIDIARY OF WEST VIRGINIA UNIVERSITY HOSPITALS-EAST, INC. d/b/a WV UNIVERSITY HEALTHCARE'S REPLY TO PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS**" via the United States Northern District Court for the Northern District of West Virginia's CM/ECF:

Shawna White
Disability Rights of West Virginia
1207 Quarrier Street
Charleston, WV 25301
***Counsel for Plaintiff***

/**s/** Joshua K. Boggs
Joshua K. Boggs (W. Va. State Bar No. 10096)