IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
MARTINSBURG

**S.L., a minor, by and through her**
**parent and legal guardian, D.L.,**

      Plaintiff,

v.                                                  **CIVIL ACTION NO.: 3:18-CV-162**
                                                                      **(GROH)**

**CITY HOSPITAL, INC. d/b/a BERKELEY**
**MEDICAL CENTER, a subsidiary of West**
**Virginia University Hospitals-East, Inc.**
**d/b/a WV UNIVERSITY HEALTHCARE,**

      Defendant.

## ORDER GRANTING MOTION TO DISMISS IN PART

Now before the Court is Defendant City Hospital Inc. d/b/a Berkeley Medical Center, a subsidiary of West Virginia University Hospitals-East, Inc. d/b/a WV University Healthcare's Motion to Dismiss [ECF No. 19] filed on November 30, 2018. The Plaintiff filed a response in opposition [ECF No. 25] on December 14, 2018. The Defendant filed a reply [ECF No. 72] on December 21, 2018. Accordingly, the matter has been fully briefed and is now ripe for review. For the following reasons, the motion is granted in part.

### I. Factual Background

This lawsuit arises from an incident ("the incident") occurring at the Berkeley Medical Center ("BMC"). The background facts of that incident are as follows.[1]

---

[1] For a motion to dismiss, the Court must assume that the Plaintiff's "well-pleaded factual allegations" are true. Accordingly, the Court recites the facts as alleged in the First Amended Complaint. ECF No. 9. The Defendant contests the accuracy of this factual summary.

The Plaintiff is a thirteen-year-old child diagnosed with autism, attention deficit hyperactivity disorder, a mild intellectual disability and an anxiety disorder. On October 12, 2016, the Plaintiff stepped on a fence post, which pierced the sole of her shoe, and injured her right foot. Thereafter, the Plaintiff's mother sought treatment for the Plaintiff at the BMC Emergency Department. The Plaintiff's mother informed BMC staff that the Plaintiff was autistic and provided the staff with a list of medications that the Plaintiff took on a regular basis. BMC medical staff informed the Plaintiff's mother that the Plaintiff needed sutures. At that time, the Plaintiff's mother explained that the Plaintiff would likely experience severe anxiety while receiving the sutures due to the Plaintiff's disabilities. Therefore, the Plaintiff's mother requested that the staff administer oral Ativan, a sedative, and topical Lidocaine, an anesthetic, to alleviate the Plaintiff's anxiety. The Plaintiff's mother shared the Plaintiff's pediatrician's contact information with BMC staff so that the Plaintiff's pediatrician could confirm that the Plaintiff needed the accommodations requested.

Despite the Plaintiff's mother's requests, BMC staff did not provide the oral Ativan or topical Lidocaine, stating that there was "no time" to do so. The Plaintiff became upset, and the Plaintiff's mother withdrew consent for treatment. Thereafter, the Plaintiff attempted to exit the patient care room. At that time, BMC staff physically restrained the Plaintiff by pushing her to the floor of the hallway. The Plaintiff's mother asked BMC staff to stop restraining her daughter, to which the staff responded that the Plaintiff was "psychotic" and in need of restraint. BMC staff then placed the Plaintiff on a gurney and continued to restrain her by holding her wrists and ankles. The Plaintiff was transported

to "Room 23," a locked room used for patients in psychiatric crisis. Then BMC staff administered an injection of Ativan, a sedative, and Geodon, an antipsychotic medication. Following these injections, BMC staff administered a Lidocaine injection and sutures.

Based on this incident, the Plaintiff filed the instant complaint which alleges: (1) Americans with Disabilities Act ("ADA") Violations; (2) Rehabilitation Act Violations; (3) Intentional Infliction of Emotional Distress ("IIED"); and (4) Battery. The Defendant moves to dismiss the complaint for failure to state a claim upon which relief may be granted. ECF No. 19 at 1.

## II. Applicable Legal Standards

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 12(b)(6) of the Federal Rules of Civil Procedure allows a defendant to challenge the complaint's sufficiency in this regard by moving to dismiss a complaint for failing "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a Rule 12(b)(6) motion, the complaint must allege "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). Although the pleading standard under Rule 8 "does not require 'detailed factual allegations,' . . . it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 555). Thus, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertions' devoid of 'further factual enhancements.'" Id. (quoting Twombly, 550 U.S. at 555, 557).

When reviewing a Rule 12(b)(6) motion, the court assumes that the complaint's well-pleaded allegations are true, resolves all doubts and inferences in favor of the plaintiff and views the allegations in a light most favorable to the plaintiff. Edwards v. City of Goldsboro, 178 F.3d 231, 243-44 (4th Cir. 1999). Only factual allegations receive the presumption of truth. Iqbal, 556 U.S. at 678-79. A court may also consider facts derived from sources beyond the four corners of the complaint, including documents attached to the complaint, documents attached to the motion to dismiss "so long as they are integral to the complaint and authentic" and facts subject to judicial notice under Federal Rule of Evidence 201. Philips v. Pitt Cnty. Mem'l Hosp., 572 F.3d 176, 180 (4th Cir. 2009).

### III. Discussion

The Defendant lists three grounds why the complaint should be dismissed including: (1) the Plaintiff failed to meet the requisite pre-suit notice requirements of the West Virginia Medical Professional Liability Act; (2) the Plaintiff improperly pled medical malpractice under the guise of Title III of the ADA and Section 504 of the Rehabilitation Act; and (3) the Plaintiff failed to plead that she was discriminated against on the basis of her disability. Each will be discussed in turn.

**A. Pre-Suit Requirements**

First, the Defendant argues that the complaint should be dismissed in its entirety because the Plaintiff failed to comply with the requirements of the West Virginia Medical Professional Liability Act ("MPLA"), codified at West Virginia Code § 55-7B-1 et seq.

4

1. **Applicable Law**

Under the MPLA, "no person may file a medical professional liability action against any health care provider without complying with the provisions of this section." W. Va. Code § 55-7B-6. The Act requires that, at least thirty days prior to filing a medical professional liability action, "the claimant shall serve by certified mail, return receipt requested, a notice of claim on each health care provider the claimant will join in litigation." W. Va. Code § 55-7B-6(b).

The act defines a "medical professional liability" action as an action "for any damages resulting from the death or injury of a person for any tort . . . based on health care services rendered, or which should have been rendered, by a health care provider or health care facility to a patient." W. Va. Code § 55-7B-2(i). It also includes "other claims that may be contemporaneous to or related to the alleged tort . . . all in the context of rendering health care services." Id. "Health care" is defined as "[a]ny act, service or treatment performed or furnished, or which should have been performed or furnished, by any health care provider . . . to or on behalf of a patient during the patient's medical care, treatment, or confinement." W. Va. Code § 55-7B-2(e)(2).

2. **Analysis**

In this case, the Plaintiff does not contest, nor could she, that her claims arise from "health care services rendered, or which should have been rendered." Each claim arises from the Plaintiff's medical treatment at the BMC for her injured foot. Accordingly, the Plaintiff's complaint falls squarely within the scope of the MPLA. The Plaintiff also does not contest that she did not provide notice of her action as required by the MPLA.

Nevertheless, the Plaintiff argues that: (1) the Supremacy Clause prevents the MPLA from applying to federal causes of action; and (2) that the MPLA does not apply to the battery and IIED claims.   These arguments will be addressed in turn.

### i. Supremacy Clause and MPLA

First, the Plaintiff argues that the Supremacy Clause prevents the MPLA from applying to the federal causes of action alleged in Counts I and II.  Specifically, the Plaintiff argues that "[s]tates cannot, consistent with the Supremacy Clause, impose procedural or substantive burdens on enforcement of rights under federal statutes." ECF No. 22 at 4.

The Supremacy Clause is designed to ensure that courts do not "give effect to state laws that conflict with federal laws."  Armstrong v. Exceptional Child Center, Inc., 135 S. Ct. 1378, 1383 (2015).   To determine whether a state law is pre-empted, the court must ask whether the enforcement of such a requirement "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress."  Felder v. Casey, 487 U.S. 131,138 (1988) (internal citations omitted).

With respect to § 1983 actions, the Supreme Court has held that notice-of-claim provisions, like the pre-filing requirement of the MPLA, are preempted by federal law. See id. at 140. Specifically, the Supreme Court held that "the absence of any notice-of-claim provision is not a deficiency requiring the importation of such statutes into the federal civil rights scheme."   Id.   "There is thus no reason to suppose that Congress intended federal courts to apply [notice-of-claim] rules, which significantly inhibit the ability to bring federal actions."  Id.   (internal citations omitted).

Like § 1983, the ADA and the Rehabilitation Act do not contain notice-of-claim provisions. Applying Felder, the lack of a notice-of-claim provision in the ADA does not suggest that courts should import a state's notice-of-claim provision into the federal civil rights scheme. There is "no reason to suppose Congress intended federal courts to apply [notice-of-claim] rules, which significantly inhibit the ability to bring federal actions." Id. (internal citations omitted). Therefore, although an issue of first impression, it is likely that the Supreme Court would find that the MLPA's notice requirements are preempted when applied to federal law.

Moreover, federal courts in West Virginia have declined to apply the MPLA's notice requirements to federal claims, even when those claims arose from an "act service or treatment performed or furnished, or *which should have been performed or furnished*." W. Va. Code § 55-7B-2(e)(2) (emphasis added). For example, in Skaggs v. Clark, the district court held that the MLPA filing requirements do not apply to Eighth Amendment claims of deliberate indifference to a serious medical need, even though the claim was based on a doctor's failure to provide appropriate medical care. Civil Action No. 3:13-3293, 2015 WL 269154 at *15 (S.D.W. Va. 2015); see also Gaylor v. Dagher, No. 2:10-cv-00258, 2011 WL 482834 (S.D.W. Va. 2011) (holding that "the pre-filing requirements of the MPLA have no application to an inmate's alleged violation of his rights under the Eighth Amendment based upon a claim of deliberate indifference to a serious medical need, because state substantive and procedural law have no application in a cause of action based solely on a federal question.").[2]

---

[2] While this Court has applied the MPLA to claims arising under the Federal Torts Claim Act ("FTCA"), this

Similarly, the Plaintiff's claims arise from medical care "which should have been performed or furnished." Specifically, the Plaintiff alleges that the Defendant should have administered an oral sedative and topical anesthetic. However, the Plaintiff frames the Defendant's failure to provide this treatment as discrimination under federal law. Therefore, while the allegations in Counts I and II arise from a failure to treat, Counts I and II are nevertheless federal claims for discrimination under the ADA and Rehabilitation Act.

Accordingly, based on the established precedent reviewed here, the Court finds that the pre-suit requirements of the MPLA do not apply to the federal claims alleged in Counts I and II.

### ii. MPLA, Battery, and IIED

Next, the Plaintiff argues that the MPLA does not apply to the battery and IIED claims alleged in Counts III and IV because the claims arise under a "well-established legal theory of liability which does not require expert testimony supporting a breach of the applicable standard of care."  CF No. 22 at 5.

The MPLA has two alternative notice provisions. The first, codified in West Virginia Code § 55-7B-6(b), requires that a claimant serve notice of her claim and a certificate of merit on each health care provider the claimant will join in litigation. If the claimant does not believe that a certificate of merit is necessary "because the cause of action is based upon a well-established legal theory of liability which does not require expert testimony," then West Virginia Code § 55-7B-6(c), requires that the claimant file "a

---

is only because the FTCA "does not create new causes of action, but merely allows the United States to be sued and held liable in tort in the same respect as a private person under the law of the place where the act occurred." Stanley v. United States, 321 F. Supp. 2d 805, 806 (N.D.W. Va. 2004).

statement specifically setting forth the basis of the alleged liability . . . *in lieu of a screening certificate.*" W. Va. Code § 55-7B-6(c) (emphasis added).

In this case, the Court need not decide whether the Plaintiff's claims in Counts III and IV are based upon well-established theories of liability which do not require expert testimony. Even if the claims are well-established, the Plaintiff still failed to provide notice as required by West Virginia Code § 55-7B-6(c).

Accordingly, Counts III and IV must be dismissed without prejudice

### 3. Conclusion

Therefore, the Defendant's Motion to Dismiss Counts I and II on the basis that the Plaintiff failed to comply with the MPLA is **DENIED**. The Defendant's Motion to Dismiss Counts III and IV is **GRANTED**. Counts III and IV are **DISMISSED WITHOUT PREJUDICE**. The statute of limitations shall toll, and the Plaintiff has thirty days following the entry of this order to comply with the requirements of the MPLA.

### B. Medical Malpractice, the ADA and the Rehabilitation Act

Next, the Defendant argues that Counts I and II should be dismissed because medical decisions are not within the scope of the ADA and Rehabilitation Act. The Plaintiff argues that "[e]ven when courts have recognized that the ADA and Section 504 cannot be used to override a professional medical judgment, they have refused to grant a blanket license to healthcare providers to deny access to care." ECF No. 2 at 7-8.

### 1. Applicable Law

Federal courts have applied the ADA and the Rehabilitation Act to claims arising from decisions by medical providers if the providers' decisions were made for

9

discriminatory rather than medical reasons. For example, in Bragdon v. Abbott, the Supreme Court considered whether a dentist's decision to treat HIV-infected patients exclusively in a hospital setting—as opposed to the dental office—violated the ADA. 524 U.S. 624 (1998). While the Court remanded the case for further consideration, it held that "courts should assess the objective reasonableness of the views of health care professionals without deferring to their individual judgments." Id. at 650. The Court further held that an individual physician's state of mind cannot excuse discrimination "without regard to the objective reasonableness of his actions." Id.

With this as a guidance, federal courts have routinely held that ADA claims based upon inadequate medical care fail, but ADA claims based upon discriminatory medical care do not. See Grant v. Alperovich, 993 F. Supp. 2d 1356, 1365 (W.D. Wash. 2014). Discrimination under the ADA includes "failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary accommodations to individuals with disabilities." Asselin v. Shawnee Mission Med. Ctr., Inc., 894 F. Supp. 1479, 1484 (D. Kan. 1995).

### 2. Analysis

In this case, the Plaintiff alleges that the Defendant "was aware that [the Plaintiff] is a person with a disability." ECF No. 9 at 9. The Plaintiff further alleges that her mother requested "reasonable accommodations for the purposes of the Americans with Disabilities Act." Id. at 10. Finally, the Plaintiff alleges that the Defendant refused "to provide the accommodations requested," and that the refusal "caused significant physical and psychological harm to [the Plaintiff]. Id. at 10-11. These allegations are more than

claims of inadequate medical care.  The Plaintiff specifically alleges that the Defendant refused to make "reasonable modifications in policies, practices, or procedures," as necessary to accommodate "individuals with disabilities."  See Asselin, 894 F. Supp. at 1484.  Accordingly, whether the Defendant's medical decisions were reasonable or discriminatory is a question of fact that the Court will not decide at the pleading stage.

### 3. Conclusion

Therefore, the Defendant's motion to dismiss Counts I and II on the basis that the ADA and Rehabilitation Act do not apply to medical decisions is **DENIED**.

## C. Link between the Plaintiff's Disability and the Defendant's Actions

Finally, the Defendant argues that Counts I and II should be dismissed because the Plaintiff failed to plead that she was discriminated against because of her disability. The Plaintiff argues that "the Amended Complaint meticulously explains the connection between [the Plaintiff's] disability and 1) her need for reasonable modifications, which [the Defendant] denied, and 2) [the Defendant's] decision to forcibly restrain her, detain her in the hospital without the consent of her mother, and forcibly administer antipsychotic medications."  ECF No. 22 at 13-14.

### 1. Applicable Law

To survive a motion to dismiss, the Plaintiff must plead the following elements, "(1) the plaintiff was disabled within the meaning of the ADA, (2) the plaintiff was discriminated against on the basis of that disability, and (3) the defendant owns, leases, or leases to or operates a place of public accommodation."  Hernandez v. Cty of Monterey, 70 F. Supp. 3d 963, 972 (N.D. Cal. 2014).

11

### 2. Analysis

As discussed above, the Plaintiff's complaint adequately pleads that the Defendant discriminated against the Plaintiff because it refused to make reasonable modifications in its policies, practices, or procedures to accommodate the Plaintiff's disabilities. The Defendant asks the Plaintiff to "provide facts indicating that there was no medical basis for the care rendered by [the Defendant's] staff." ECF No. 25 at 12. However, the Plaintiff need not prove her case at the pleading stage. Whether the Defendant's decisions were "reasoned medical judgment[s]" or motivated by discrimination are questions of fact that the Court will not resolve here.

### 3. Conclusion

Therefore, the Defendant's motion to dismiss Counts I and II on the basis that the Plaintiff failed to adequately plead her claims is **DENIED**.

### IV. Conclusion

For the aforementioned reasons, the Court **ORDERS** that the Defendant's Motion to Dismiss [ECF No. 19] is **GRANTED IN PART**. Specifically, Counts III and IV of the Plaintiff's Complaint are **DISMISSED WITHOUT PREJUDICE**.

The Clerk is **DIRECTED** to transmit copies of this Order to all counsel of record herein.

**DATED:** February 22, 2019

*/s/ Gina M. Groh*
GINA M. GROH
CHIEF UNITED STATES DISTRICT JUDGE