# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

S.L., A MINOR, BY AND THROUGH
HER PARENT AND LEGAL GUARDIAN D.L.

    **Plaintiff,**

v.                                            **CIVIL ACTION NO. 3:18-CV-162**
                                                 **(Groh)**

CITY HOSPITAL, INC. d/b/a BERKELEY MEDICAL CENTER,
A subsidiary of WEST VIRGINIA UNIVERSITY
HOSPITALS-EAST, INC., d/b/a
WV UNIVERSITY HEALTHCARE,

    **Defendant.**

### DEFENDANT CITY HOSPITAL, INC. d/b/a BERKELEY MEDICAL CENTER, A SUBSIDIARY OF WEST VIRGINIA UNIVERSITY HOSPITALS-EAST, INC. d/b/a WV UNIVERSITY HEALTHCARE'S RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION FOR LEAVE TO FILE A SECOND AMENDED COMPLAINT FOLLOWING FILING OF NOTICE OF CLAIM AND STATEMENT SETTING FORTH THE BASIS OF ALLEGED LIABILITY

NOW COMES the Defendant, City Hospital, Inc. d/b/a Berkeley Medical Center, a subsidiary of West Virginia University Hospitals-East, Inc. d/b/a WV University Healthcare ("BMC"), by and through its counsel, and submits this Response In Opposition To Plaintiff's Motion For Leave To File A Second Amended Complaint Following Filing Of Notice Of Claim And Statement Setting Forth The Basis Of Alleged Liability.

On February 22, 2019, this Court dismissed Counts III (Intentional Infliction of Emotional Distress) and IV (Battery) of Plaintiff's First Amended Complaint as a result of Plaintiff's failure to comply with the requirements of the Medical Professional Liability Act ("MPLA"). In doing so, the Court ordered that Plaintiff has thirty days in which to comply with the requirements of the MPLA with respect to these Counts. [ECF 26, p. 9].

On March 22, 2019, Plaintiff filed a Motion for Leave to File Second Amended Complaint Following Filing Notice of Claim and Statement Setting Forth the Basis of Alleged Liability ("Motion for Leave"). [ECF 30]. The Motion for Leave is premature and inconsistent with the Court's Order and the MPLA's Notice of Claim ("NOC") provision. In addition, Plaintiff's Statement Setting Forth the Basis of Liability In Lieu of Certificate of Merit ("Statement") is insufficient because expert testimony is necessary given the complex medical issues presented within Counts III and IV, and thus, a screening Certificate of Merit ("COM") should have been provided. Accordingly, BMC opposes Plaintiff's Motion for Leave as Plaintiff has still failed to comply with the MPLA as it relates to Counts III and IV.

### I. Plaintiff's "Motion for Leave" is Premature as Plaintiff has not complied with the MPLA.

The Notice of Claim is the foundational element of the MPLA. The MPLA states, "no person may file a medical professional liability action against any healthcare provider without complying with the provisions of this section." W. Va. Code §55-7B-6(a). The NOC provision exists "(1) to prevent the making and filing of frivolous medical malpractice claims and lawsuits; and (2) to promote the pre-suit resolution of non-frivolous medical malpractice claims." *Roy v. D'Amato*, 218 W. Va. 692, 697, 629 S.E.2d 751, 756 (2006). The Notice triggers a *thirty day waiting period* prior to the filing of a complaint in which the Notice-recipient can investigate and analyze the basis of the claim against it, determine its legitimacy, and request pre-suit mediation if Defendant believes the same to be necessary.

Plaintiff filed her Motion for Leave with an attached "Seconded Amended Complaint" in an attempt to file said Complaint upon the Court's grant of leave to do so. BMC did not receive the NOC until Tuesday, March 26. Assuming the NOC's filing date is March 22, along with the other two documents filed, Plaintiff's Complaint may not be filed until April 22nd. The Court

cannot grant Plaintiff leave to file the Second Amended Complaint any earlier than April 22nd because Plaintiff again will have failed to comply with the MPLA's notice provision.[1]

Filing the Complaint earlier than the time period prescribed in the statute robs BMC of its opportunity for pre-suit analysis as the MPLA intends. *Westmoreland v. Vaidya*, 222 W. Va. 205, 210, 664 S.E.2d 90, 95 (2008) (citing Syl. Pt. 2, *Hinchman v. Gillette*, 217 W. Va. 378, 618 S.E.2d 387 (2005)). Because Plaintiff's "Motion for Leave to File" is premature and noncompliant with the MPLA's NOC provision, BMC opposes Plaintiff's Motion for Leave.

## II. Plaintiff's assertion of battery and intentional infliction of emotional distress requires a Certificate of Merit.

In a medical malpractice case that is procedurally compliant with the MPLA, the claimant will file a NOC and a COM together, or a statement of intent to file a COM,[2] thirty days before a complaint could potentially be filed, depending on the defendant's response to the NOC. Within:

> Thirty days of receipt of the claim or within thirty days of receipt of the screening certificate of merit . . . [the healthcare provider] may respond, in writing, to the claimant [and] state that the health care provider has a bona fide defense and the name of the health care provider's counsel . . . If the healthcare provider demands mediation . . . [it] shall be concluded within forty-five days of the date of the written demand.

W. Va. Code § 55-7B-6(f) and (h).

MPLA jurisprudence has developed this point further, and the West Virginia Supreme Court of Appeals has found that "[b]efore a defendant in a lawsuit against a healthcare provider can challenge the legal sufficiency of a plaintiff[']s pre-suit notice of claim or screening

---

[1] This assumes that BMC does not elect pre-suit mediation, which must be conducted within forty-five days of the date of the NOC, and would further delay the filing of Plaintiff's Second Amended Complaint. W. Va. Code § 55-7B-6(h).

[2] *See* W. Va. Code § 55-7B-6(d): "The claimant shall comply with the provisions of subsection (b) of this section except that the claimant or his or her counsel shall furnish the health care provider with a statement of intent to provide a screening certificate of merit within sixty days of the date the health care provider receives the notice of claim."

certificate merit under W. Va. Code, 55–7B–6 [(2003) (Supp. 2007)], the plaintiff must have been given written and specific notice of, and an opportunity to address and correct, the alleged defects and insufficiencies." *Westmoreland*, 222 W. Va. at 210–11, 664 S.E.2d at 95–96 (citation omitted); *see also Gray v. Mena*, 218 W. Va. 564, 569, 625 S.E.2d 326, 331 (2005) (Defendant "must identify with particularity each alleged insufficiency or defect in the notice and certificate and all specific details requested by the defendant."). Case law is clear that a defendant's failure to express its objections to the COM will result in waiver of those objections after the suit is filed. *Butts v. Berkeley Med. Ctr.*, No. 3:16-CV-53, 2016 WL 11504761, at *2 (N.D.W. Va. July 20, 2016) ("Failure to make such a request or to promptly object to the notice of claim or the certificate of merit waives a defendant's ability to object to the notice or the certificate once suit has been filed.").

As a result of Plaintiff's failure to comply with the procedural elements of the MPLA, BMC is unable to move forward with its typical procedure, i.e., receipt of NOC and COM/Statement, response to claimant with a letter 1) seeking pre-suit mediation, 2) stating an intent to defend, or 3) objecting to defects and insufficiencies in the NOC or COM/statement in lieu of a COM. Instead, Plaintiff has filed the Motion for Leave, leaving BMC with no option but to respond to the Motion currently under the Court's consideration or risk waiver of its objections.

Because it must proceed in response to Plaintiff's current Motion, BMC herein states its opposition to the Motion for Leave and rejects Plaintiff's contention that "no screening certificate of merit is required under W. Va. Code § 55-7B-6 for [battery and intentional infliction of emotional distress] because they do not require expert testimony supporting a breach of the applicable standard of care." [Notice of Claim, p.3].

Plaintiff's Statement repeats the facts from her First Amended Complaint. It is unclear whether Plaintiff alleges that physicians, who are not, and were not, agents, servants, or employees of BMC,[3] are ultimately responsible for ordering and thereby committing the alleged medical malpractice or if only nurses or other medical personnel who are more likely to be employed by BMC are the targets of these allegations. It is also unclear exactly which actions Plaintiff asserts to have fallen below the standard of care and what standard applies in the situation that occurred during Plaintiff's visit to the Emergency Department.

These are details that should be provided to a defendant in the statement of liability thirty days before the complaint is filed, yet here, BMC still knows as much about the battery and intentional infliction of emotional distress claims as it did when Plaintiff failed to appropriately file her action pursuant to the MPLA the first time. This is due to the fact that Plaintiff's Statement is based on an incomplete reading of W. Va. Code 55-7B-6(c).

This Code section requires more than assigning liability on the basis of any well-established theory of legal liability,[4] like battery and intentional infliction of emotional distress. It requires that a plaintiff put forth a claim based "upon a well-established legal theory of liability *which does not require expert testimony supporting a breach of the applicable standard of care.*" W. Va. Code § 55-7B-6 (emphasis added); *see O'Neil v. United States*, No. CIV.A. 5:07-CV-00358, 2008 WL 906470, at *4 (S.D.W. Va. Mar. 31, 2008).

---

[3] *See Burless v. West Virginia University Hospitals, Inc.*, 215 W. Va. 765, 601 S.E.2d. 85 (2004); West Virginia Code §§18-11C-4(d); 18B-2A-4(p), (w), and (z). BMC is not subject to liability for the alleged negligent acts of physicians or any other faculty or resident physician who provided care to Plaintiff under a theory of ostensible agency. *See* West Virginia Code §55-7B-9(g): "A health care provider may not be held vicariously liable for the acts of a nonemployee pursuant to a theory of ostensible agency unless the alleged agent does not maintain professional liability insurance covering the medical injury which is the subject of the action in the aggregate amount of at least one million dollars."

[4] Plaintiff states that a COM is not required because this action is "based upon well-established legal theories of liability for battery and intentional infliction of emotional distress." [Statement, p. 3].

This is the connection that Plaintiff fails to make because she has not identified the standard of care applicable to the treatment Plaintiff received. Plaintiff's characterization of the treatment she received in the emergency department is reduced to the conclusory statement that a lay juror would have the common knowledge and experience to understand that Plaintiff was "without justification and without [her mother's] consent pushed to the floor, forcibly restrained, and strapped to a gurney . . . [and] given stitches and administered medications without [her mother's] consent." [Notice of Claim, p. 4]. This sentence itself is loaded with assumptions regarding the standard of care and appropriate methods for treating a combative pediatric patient. It is a reductive view of the complex encounter with which the healthcare providers were faced when providing treatment to S.L. and certainly falls short of this Court's recommendation that a plaintiff "should ensure that as much conceivably relevant information as possible is included in the certificate of merit, to avoid unnecessary confusion and to best allow for pre-suit resolution of substantial claims." *Butts* at *4.

A lay juror's presumed understanding of the concepts of withdrawal of consent and battery are not enough to determine the factual issues presented by this medical malpractice action. This action presents intricate issues— "technical medical decision[s], which [are] not within the ordinary and common knowledge of the average lay juror[]" *Banfi v. Am. Hosp. for Rehab.*, 207 W. Va. 135, 141, 529 S.E.2d 600, 606 (2000)— regarding the standard of care for the treatment of a child with Autism and one who became combative towards the treating providers. This action presents complex issues regarding hospital personnel's ability to restrain a violent patient for the protection of the patient and themselves; the appropriate amount of force, physical and chemical, to be applied to a combative patient; the appropriate and medically indicated methods for restraining a pediatric patient; the ethical obligations of healthcare

providers when treating patients generally and Autistic pediatric patients specifically; and when consent is or is not required in rendering medical care.

These subjects are not within the purview of the lay jury. The question of whether expert testimony is required in a medical malpractice action hinges upon whether the "lack of care or want of skill is so gross, so as to be apparent, or the alleged breach relates to *noncomplex matters of diagnosis and treatment within the understanding of lay jurors by resort to common knowledge and experience.*" *O'Neil*, 2008 WL 906470 at *4.

Plaintiff's allegations involve the question of whether appropriate treatment was rendered to Plaintiff and the many related issues stated above that call into question matters of healthcare ethics, independent provider judgment, nationally recognized policy standards, and management of the unique needs of a disabled patient. Of material import is the fact that the treatment rendered involved the use of restraint, precipitated by S.L.'s violent reaction towards the providers. The issue of appropriate restraint against a patient has been determined by the West Virginia Supreme Court of Appeals, and many other courts, to require expert testimony: "Our research indicates that the majority of jurisdictions considering the question of whether restraining a patient is, in fact, a technical medical decision have concluded that it is a complex determination, and therefore expert testimony is required to educate the jury as to the appropriate standard of care." *Banfi*, 207 W. Va. at 141, 529 S.E.2d at 606. Furthermore, the use of restraints on a patient is a unique ethical issue driven by national standards, hospital policy and procedure, and a physician's independent medical judgment.[5]

---

[5] "Restraints may be necessary to prevent patients from harming themselves or others while in the hospital. This need must be balanced against the potential for the patient's loss of dignity, physical harm, psychological harm, or violation of community standards specific to restraining patients. Hospital staff, in collaboration with physicians, must establish criteria for the use of restraints, establish policies and procedures for the ordering, monitoring, and safe use of restraints, and ensure that physicians and nurses understand and follow the criteria, policies, and procedures. Restraints may be chemical, such as sedating medications; or physical, including wrist and/or ankle

Entwined in the question of whether restraint of this patient was appropriate is Plaintiff's allegation of the withdrawal of consent, resulting in the battery and intentional infliction of emotional distress claims. A physician may be liable for the commission of a battery in the "performance . . . of an operation or other treatment without first obtaining any consent from the patient . . . ." 61 Am. Jur. 2d Physicians, Surgeons, Etc. § 149.[6] However, this legal action does not present a simple question of whether a provider rendered care despite the protest of the patient's guardian.[7] The question is whether the healthcare providers met the standard of care for treating a combative patient and whether, as a result of such failure, the healthcare providers unlawfully proceeded with rendering treatment after consent was withdrawn. This standard can only be proven in this case with an expert witness who will opine as to the standard of care required when treating a combative pediatric patient with Autism. A question of this complexity does not fit within the narrow "common knowledge" exception that negates the general requirement for expert testimony. *Totten v. Adongay*, 175 W. Va. 634, 638, 337 S.E.2d 2, 6 (1985). At its core, Plaintiff's claim is one that "challenges an implicit part of the medical treatment" and she should not be able "to avoid the requirement of an expert medical opinion simply by claiming medical battery or something other than medical malpractice." *Holzrichter v. Yorath*, 2013 IL App (1st) 110287, ¶ 88, 987 N.E.2d 1, 19.

---

restraints; rarely, vest restraints; and more frequently the use of bedrails as a form of restraint." Arthur Shorr, Hospital Negligence: Legal and Administrative Issues, Use of Restraints § 5:4 (Dec. 2018 Update).

[6] West Virginia has not established a medical battery statute nor has the common law been developed; however, other states have defined the elements of medical battery to include: "(1) no consent to the medical procedure performed; (2) the procedure was contrary to the injured party's will; or (3) substantial variance of the procedure from the consent granted." *Holzrichter v. Yorath*, 2013 IL App (1st) 110287, ¶ 83, 987 N.E.2d 1, 17–18; *see also Lipp v. Kwyer*, 2003-Ohio-3988, ¶ 25, "In a medical setting, a physician who treats a patient without consent commits a battery, even though the procedure is harmless or beneficial."

[7] BMC disputes Plaintiff's allegation that consent was withdrawn by patient's mother, but states it as fact for the purposes of this Response.

Ultimately:

> In determining whether a notice of claim and certificate are legally sufficient, a reviewing court should apply W. Va. Code, 55–7B–6 [2003] in light of the statutory purposes of preventing the making and filing of frivolous medical malpractice claims and lawsuits; and promoting the pre-suit resolution of non-frivolous medical malpractice claims. Therefore, a principal consideration before a court reviewing a claim of insufficiency in a notice or certificate should be whether a party challenging or defending the sufficiency of a notice and certificate has demonstrated a good faith and reasonable effort to further the statutory purposes.

*Hinchman*, 217 W. Va. at 386, 618 S.E.2d at 395.

In proffering a Statement that does nothing more than repeat the disputed facts of her First Amended Complaint, Plaintiff has failed to demonstrate a good faith and reasonable effort to promote the goals of preventing frivolous medical malpractice claims. In order to sufficiently set forth Plaintiff's battery and intentional infliction of emotional distress claims, which this Court has already determined to be grounded in medical malpractice, Plaintiff must find an expert to assert the standard of care applicable to the patient's condition and presentation during the period in question. The treatment provided to this patient does not fall within the narrow exception to the general rule that expert testimony is necessary in medical malpractice cases as such treatment is beyond the ken of an average lay juror. As a result, Defendant objects to Plaintiff's Statement as deficient and rejects the notion that such Statement satisfies the statutory requirements and purposes of W. Va. Code § 55-7B-6.

WHEREFORE, Defendant BMC respectfully submits its Response in Opposition To Plaintiff's Motion For Leave To File A Second Amended Complaint Following Filing Of Notice Of Claim And Statement Setting Forth The Basis Of Alleged Liability and its objections to Plaintiff's Statement and requests that this Honorable Court find that Plaintiff failed to comply with the MPLA and this Court's February 22, 2019 Order Granting Motion to Dismiss in Part;

deny Plaintiff's Motion for Leave; and, provide such other and further relief as the Court deems appropriate.

Respectfully submitted this 27th day of March, 2019.

> **CITY HOSPITAL, INC. d/b/a BERKELEY MEDICAL CENTER, A subsidiary of WEST VIRGINIA UNIVERSITY HOSPITALS-EAST, INC., d/b/a WV UNIVERSITY HEALTHCARE**
>
> **By Counsel**

/s/ Joshua K. Boggs
_____
Christine S. Vaglienti (W. Va. State Bar ID #4987)
Joshua K. Boggs (W. Va. State Bar ID #10096)
Lauren T. Krupica (W. Va. State Bar ID #11719)
**WEST VIRGINIA UNITED HEALTH SYSTEM, INC.**
West Virginia University Hospitals, Inc.
1238 Suncrest Towne Centre Drive
Morgantown, West Virginia 26505
Telephone: 304/598-4070
Facsimile: 304/598-9888
vaglientic@wvumedicine.org
joshua.boggs@wvumedicine.org
lauren.twiggkrupica@wvumedicine.org

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

S.L., A MINOR, BY AND THROUGH
HER PARENT AND LEGAL GUARDIAN D.L.

    Plaintiff,

v.                                CIVIL ACTION NO. 3:18-CV-162
                                    (Groh)

CITY HOSPITAL, INC. d/b/a BERKELEY MEDICAL CENTER,
A subsidiary of WEST VIRGINIA UNIVERSITY
HOSPITALS-EAST, INC., d/b/a
WV UNIVERSITY HEALTHCARE,

    Defendant.

## CERTIFICATE OF SERVICE

    I, Joshua K. Boggs, do hereby certify that I have *electronically filed* and caused to be served this 28th day of March, 2019, the foregoing "**DEFENDANT CITY HOSPITAL, INC. d/b/a BERKELEY MEDICAL CENTER, A SUBSIDIARY OF WEST VIRGINIA UNIVERSITY HOSPITALS-EAST, INC. d/b/a WV UNIVERSITY HEALTHCARE'S RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION FOR LEAVE TO FILE A SECOND AMENDED COMPLAINT FOLLOWING FILING OF NOTICE OF CLAIM AND STATEMENT SETTING FORTH THE BASIS OF ALLEGED LIABILITY**" via the United States Northern District Court for the Northern District of West Virginia's CM/ECF:

Shawna White
Disability Rights of West Virginia
1207 Quarrier Street
Charleston, WV 25301
***Counsel for Plaintiff***

                                    /s/ Joshua K. Boggs
                                    Joshua K. Boggs (W. Va. State Bar No. 10096)