IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

S.L., A MINOR, BY AND THROUGH
HER PARENT AND LEGAL GUARDIAN D.L.

    **Plaintiff,**

v.                      CIVIL ACTION NO. 3:18-CV-162
                                   (Groh)

CITY HOSPITAL, INC. d/b/a BERKELEY MEDICAL CENTER,
A subsidiary of WEST VIRGINIA UNIVERSITY
HOSPITALS-EAST, INC., d/b/a
WV UNIVERSITY HEALTHCARE,

    **Defendant.**

**PLAINTIFF'S RESPONSE MEMORANDUM IN OPPOSITION TO DEFENDANT'S
<u>MOTION TO DISMISS</u>**

**NOW COMES** the Plaintiff, S.L., a minor, by and through her parent and legal guardian D.L., by and through her counsel, hereby submits her Memorandum in Opposition to Defendant's Motion to Dismiss and states as follows:

    **I.    Preliminary Statement and Factual Background**

S.L., an autistic teenager, visited Berkeley Medical Center ("BMC") on October 12, 2016, seeking stitches for a minor injury to her foot. Am. Compl. ¶¶ 21, 22, 23. As a result of her autism and related disabilities, S.L. could not tolerate the suture procedure without basic disability accommodations, such as anxiety management and topical anaesthetic. Am. Compl.

¶¶ 30, 31. BMC staff refused to provide these accommodations, not because they felt these accommodations would be contraindicated but because they did not wish to spend any additional time on treating S.L. Am. Compl. ¶¶ 43, 44, 45, 46, 47.

When S.L. became distressed at the idea of receiving sutures without the accommodations she needed, her mother offered to seek treatment at another hospital. Am. Compl. ¶¶ 51, 52. BMC refused to permit S.L. or her mother to leave and instead sent numerous staff members to forcibly restrain S.L. and administer injectable antipsychotic medications against her will and without her consent, before ultimately administering stitches to S.L.'s foot. Am. Compl. ¶¶ 57-90. Due to the contemporaneous statements of BMC staff, S.L. and her mother reasonably believe that BMC's actions in detaining and restraining S.L. were based on discriminatory and stereotypical attitudes toward children with disabilities like S.L.'s, and that a nondisabled child expressing similar distress would not have been forcibly restrained.

Defendant now moves to dismiss, arguing in various ways that the complaint should have been brought as a medical malpractice action rather than an action under federal disability discrimination laws or state laws concerning battery and intentional infliction of emotional distress. Defendant's arguments are meritless and, especially as applied to plaintiff's federal claims, would eviscerate the broad remedial intent of federal anti-discrimination laws as applied to hospitals. As a result, Defendant's Motion to Dismiss should be denied.

## II.   Applicable law: Federal Rule of Civil Procedure 12(b)(6)

At this stage, Plaintiff must merely state facts that give rise to a claim that is "plausible on its face." *Bell Atl. Corp v. Twombly,* 550 U.S. 544, 570 (2007). For the purposes of a motion to dismiss, courts must accept the allegations in the Complaint as true and must liberally construe

the Complaint in favor of the Plaintiff. *Mylan Labs, Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993). A 12(b)(6) motion to dismiss "is not a procedure for resolving a contest about the facts or the merits of the case," and "must be distinguished from a motion for summary judgment under Federal Rule of Civil Procedure 56, which goes to the merits of the claim and is designed to test whether there is a genuine issue of material fact." *Rich v. Life Ins. Co. of N. Am.,* No. 3:12-CV-92, 2013 U.S. Dist. LEXIS 44601, at *8, 9, 10 (N.D.W.Va March 28, 2013). Such motions are granted "only in very limited circumstances." *Rogers v. Jefferson-Pilot Life Ins. Co.,* 883 F.2d 324, 325 (4th Cir. 1989). Indeed, "a motion to dismiss for failure to state a claim should not be granted unless it appears certain that the plaintiff can prove no set of facts which would support its claim and would entitle it to relief." *Mylan Labs, Inc.*, 7 F.3d at 1134.

**III. Argument**

    **A. The Medical Professional Liability Act does not apply to this action.**

Defendants first argue that the Medical Professional Liability Act "MPLA"), W. Va. Code § 55-7B-1, et seq., requires dismissal of all of S.L.'s claims. The MPLA imposes certain pre-suit requirements on state actions involving medical malpractice. Defendant argues that (1) the MPLA's pre-suit requirements apply to federal causes of action that concern medical treatment, including actions the Rehabilitation Act and the Americans with Disabilities Act; and (2) the MPLA's pre-suit requirements apply to state-law claims of battery and intentional infliction of emotional distress. In fact, the MPLA cannot limit an individual's ability to pursue federal causes of action and should not apply to S.L.'s straightforward, non-technical claims for battery and intentional infliction of emotional distress.

### 1. The Supremacy Clause prevents the MPLA from applying to federal causes of action.

Defendants argue, without citing any relevant authority, that the pre-suit requirements of the MPLA should apply to actions under the Americans with Disabilities Act and Rehabilitation Act. Permitting states to impose pre-filing requirements on federal claims filed in federal court, however, would violate the Supremacy Clause and prior attempts to impose such requirements have been overwhelmingly rejected.

The United States Constitution provides that the laws of the United States are "the supreme Law of the Land" and that "the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. Const. art. VI, cl. 2. States cannot, consistent with the Supremacy Clause, impose procedural or substantive burdens on enforcement of rights under federal statutes. *See Felder v. Casey*, 487 U.S. 131, 140 (1988) (noting that "we fully agree with this near-unanimous conclusion of the federal courts" that state notice-of-claim statutes cannot be applied in federal courts to federal claims such as § 1983, and further holding that such statutes cannot be applied to § 1983 claims even in state courts); *see also Haywood v. Drown*, 556 U.S. 729, 741 n.8 (2009) (noting that "if New York had decided to employ a procedural rule to burden the enforcement of federal law," such a decision would be unconstitutional).

Accordingly, even where federal courts that have applied the pre-suit requirements to state-law claims, they have declined to apply them to claims under the Americans with Disabilities Act or Rehabilitation Act. *See, e.g.*, *Lockwood v. Our Lady of the Lake Hosp., Inc.*, No. 17-00509-SDD-EWD, 2018 U.S. Dist. LEXIS 118949, at *17 (M.D. La. July 17, 2018) (declining to apply state pre-suit requirements for malpractice suits to claims brought under the

Rehabilitation Act); *Gordon v. Tygart Valley Reg'l Jail*, No. 3:12CV34, 2013 U.S. Dist. LEXIS 28445, at *28-34 (N.D.W. Va. Feb. 4, 2013) (analyzing plaintiff's Americans with Disabilities Act claims without reference to the MPLA); *Liss v. Nassau County*, 425 F. Supp. 2d 335 (E.D.N.Y. 2006) (dismissing state claims as preempted by the state's workers' compensation law but holding that that law "does not bar an employee from suing his employer under federal civil rights laws" such as the Americans with Disabilities Act); *Smith v. Indiana*, 904 F. Supp. 877, 880 (N.D. Ind. 1995) (holding that a state law imposing pre-suit requirements for medical malpractice actions cannot be applied to claims under the ADA, as doing so would violate the Supremacy Clause). *Cf. Skaggs v. Clark*, No. 3:13-cv-03293, 2014 U.S. Dist. LEXIS 180744, at *25 (S.D. W. Va. Dec. 10, 2014) (MPLA does not apply to § 1983 claims); *Gaylor v. Dagher*, No. 2:10-cv-00258, 2011 U.S. Dist. LEXIS 12400, at *28-29 (S.D. W. Va. Jan. 14, 2011) ("the pre-filing requirements of the MPLA have no application to an inmate's alleged violation of his rights under the Eighth Amendment . . . because state substantive and procedural law have no application in a cause of action based solely on a federal question"); *Lopez v. S.B. Thomas, Inc.*, 831 F.2d 1184, 1190 (2d Cir. 1987) (state workers' compensation act cannot preempt federal claims as this would "clearly run afoul of the Supremacy Clause").

### 2. The MPLA's pre-suit notification requirements should not apply to Plaintiff's battery and intentional infliction of emotional distress claims

Defendant argues that the pre-suit notification requirement in the MPLA should be applied to S.L.'s claims for battery and intentional infliction of emotional distress. Nevertheless, the pre-suit notification requirements of the MPLA do not apply to claims that arise under a "well-established legal theory of liability which does not require expert testimony supporting a breach of the applicable standard of care." *Pearson v. Panaguiton*, No. CV 1:15-07411, 2018

U.S. Dist. LEXIS 70925, at *6 (S.D.W. Va. Apr. 27, 2018). Expert testimony is not necessary when "the alleged breach relates to noncomplex matters of diagnosis and treatment within the understanding of lay jurors by resort to common knowledge and experience." *Farley v. Shook*, 218 W. Va. 680, 685 (2006).

Plaintiff's claims for battery and intentional infliction of emotional distress relate to matters that are well within the understanding of lay jurors. A lay juror could reasonably be expected to understand that pushing a person to the floor, strapping her to a gurney, and forcibly injecting her with medications without either her consent or the consent or her guardian, in the absence of any exigent circumstances that would justify such a course of action, constitutes a battery. Am. Compl. ¶¶ 136-38. A lay juror could also be expected to understand that such conduct toward a 13-year-old minor may cause significant emotional distress. *Id.* ¶¶ 129-134. As a result, the pre-suit requirements of the MPLA should not apply to these claims.

### 3. If the court determines that the MPLA should apply to S.L.'s claims, it should permit S.L. to re-file after compliance with the MPLA's pre-suit requirements.

As discussed in further detail above, there is ample precedent to support the conclusion that the MPLA should not apply to federal claims. S.L.'s counsel reasonably relied on this precedent in determining the appropriate course of action to pursue her discrimination claims. Moreover, counsel also reasonably determined that expert testimony would not be necessary to prove liability on S.L.'s battery or intentional infliction of emotional distress claims, and that as a result, the MPLA's pre-suit filing requirements would not apply.

Even in cases where a court determines that the pre-suit requirements of the MPLA should apply, this determination "should not be unnecessarily utilized as an instrument to prevent adjudication on the merits" in situations where counsel has, "in good faith, made a legitimate

judgment" that an underlying action should not be framed as a medical malpractice action." *Gray v. Mena*, 218 W. Va. 564, 570 (W. Va. 2005). In such circumstances, the appropriate remedy is to toll the statute of limitations to permit the plaintiff to comply with the pre-suit filing requirements of the MPLA, and then to permit the plaintiff to re-file his or her claims. *Id.* 570-71.

### B. Both the ADA and Section 504 apply to discrimination in medical contexts.

In its motion to dismiss, Defendant argues that healthcare providers should be categorically exempt from compliance with the ADA and Section 504, so long as the discriminatory conduct related in some way to the provision of medical treatment. Neither the case law nor the intent of the ADA and Section 504 support such an exemption. Courts have repeatedly recognized that conduct by health providers may violate the ADA and/or Section 504 when it results in discriminatory denial of equal access to health services, programs, or activities, and when such a denial is not the result of an exercise in medical judgment.[1] S.L. has adequately pled that none of BMC's discriminatory conduct was based in medical judgment.

#### 1. The conduct described in the complaint was the result of disability discrimination and not a "purely medical decision."

Courts have consistently recognized that denial of medical care can violate the ADA and/or Section 504 when it is the result of disability discrimination. Even when courts have recognized that the ADA and Section 504 cannot be used to override a professional medical

---

[1] Except where otherwise noted, we will treat the ADA and Rehabilitation Act as coextensive. *See* Bennett-Nelson v. La. Bd. Of Regents, 431 F.3d 448, 454 (5th Cir. 2005) ("the rights and remedies afforded plaintiffs under Title II of the ADA are almost entirely duplicative of those provided under § 504 of the Rehabilitation Act").

judgment, they have refused to grant a blanket license to healthcare providers to deny access to care.

In *Bragdon v. Abbott*, the Supreme Court recognized that a dentist's policy of treating HIV-positive patients only in hospital settings may violate the ADA, despite the dentist's insistence that his policy was based in a medical judgment that treating such patients in a regular dental office would pose a direct threat. 524 U.S. 624 (1998). Instead of automatically deferring to the dentist's medical judgment, the Court held that the dentist's judgment must be supported by "objective evidence." *Id.* at 649. *See also Kiman v. N.H. Dep't of Corr.,* 451 F.3d 274 (1st Cir. 2006) (vacating the district court's order of summary judgment on plaintiff's ADA claim where denial of medically appropriate care was not a result of "a medical 'judgment'" subject to differing opinion"); *McNally v. Prison Health Servs.*, 46 F. Supp. 2d 49, 58-59 (D. Me. 1999) (prison's policy of requiring blood tests before providing patients with HIV medication, but not for other types of medication, "lacks any medical explanation" and as a result, "[a] jury could infer that PHS's policy effectively denies HIV-positive prisoners access to PHS's prescription program and adequate health services because of their particular disability"); *McKissick v. County of York*, No. 1:09-CV-01840, 2010 WL 1930132, at *7 (M.D. Penn. Mar. 19, 2010) (distinguishing between "medical malpractice" claims involving medical judgment and "outright denial of medical services," which may violate ADA); *Andrews v. Rauner*, No. 3:18-cv-1101, 2018 U.S. Dist. LEXIS 131412, at *12 (C.D. Ill. Aug. 3, 2018) (finding that plaintiff had stated a claim under the ADA when prison had denied her "access to hospitalization outside of the prison but allowed prisoners with physical injuries or illnesses to receive outside hospitalization").

Healthcare providers may violate the ADA or Section 504 not only through discriminatory denial of services but also through failing to modify policies and practices where necessary to ensure meaningful access to care. For example, in *Asselin v. Shawnee Mission Medical Center*, the District of Kansas held that the plaintiff had stated a valid claim under the ADA when a hospital had refused to modify its blood testing policy, where such testing was necessary in order to ensure that medication the hospital administered did not interact negatively with the patient's epilepsy medications. 894 F. Supp. 1479, 1484 (D. Kan. 1995).

Even the cases cited by Defendant itself recognize the distinction between "purely medical decisions" and decisions that are based on discriminatory animus rather than medical judgment. In *Grant v. Alperovich,* the Western District of Washington recognized that "purely medical decisions" do not fall within the scope of the ADA but then *separately* considered the plaintiff's argument that the underlying denial of medical care was a result of discrimination based on her mental health history. 993 F. Supp. 2d 1356, 1365 (W.D. Wash. 2014). It awarded summary judgment to the defendants *only* because that particular plaintiff had failed to rebut defendants' evidence that their conduct was based on medical judgment, not because denial of medical care could never constitute an ADA violation as a matter of law. Indeed, in many of the cases cited by Defendant in which courts determined that a provider's conduct was a "purely medical decision," this determination occurred at the summary judgment stage or later, after discovery was complete and plaintiffs had failed to uncover evidence to the contrary. *See Bryant v. Madigan,* 84 F.3d 246, 247 (7th Cir. 1996); *Burger,* 418 F.3d at 883; *Grant,* 993 F. Supp. 2d at 1359.

S.L. has adequately pled in her complaint that the decision not to provide oral Ativan or topical Lidocaine or to talk S.L. through the suture procedure was not a "purely medical decision" but instead resulted from Defendant's disregard for S.L.'s need for reasonable accommodations. The Amended Complaint explains that the accommodations D.L. requested are common accommodations for people with disabilities like S.L.'s, and that S.L. had received these accommodations at the same hospital in the past. Am. Compl. ¶¶ 33, 37-42. The Amended Complaint also notes that the decision not to provide these accommodations was based not in medical judgment but rather a nurse's arbitrary determination that she did not have time to administer them. Am. Compl. ¶ 44. Moreover, this decision that there was "no time" was not based on medical urgency, because at that point S.L. had been waiting for over an hour for treatment and was in stable medical condition. Am. Compl. ¶¶ 44, 47.

### 2. The Amended Complaint concerns denial of reasonable modifications, not a freestanding complaint of inadequate medical care.

Defendant further argues that its conduct was not actionable under the ADA or Section 504 because these statutes do not provide a freestanding remedy for inadequate medical treatment. The cases it cites for this proposition, however, all concern complaints of inadequate treatment of the *same* underlying medical condition that gave rise to the plaintiff's disability. Where, like S.L., a patient requires an *accommodation* in order to benefit from the same medical treatment offered to others, courts have consistently recognized that denial of such accommodations may violate the ADA or Section 504.

As Defendant notes, some courts have declined to apply the ADA or Section 504 to general complaints of inadequate medical care for a condition that results in a disability. *See*

10

*Burger v. Bloomberg*, 418 F.3d 882, 883 (8th Cir. 2005) (describing inadequate treatment for a deceased individual's diabetes); *Grant,* 993 F. Supp.2d at 1359-64 (noting that plaintiff's ADA claims were based on defendants' failure to pursue a particular course of treatment for the illness that gave rise to the claims); *Bryant,* 84 F.3d at 249 (noting that plaintiff's ADA claims were based on defendants' "incompetent treatment of his paraplegia"); *Fitzgerald v. Corrections Corp. of Am.*, 403 F.3d 1134 (10th Cir. 2005).

Unlike the plaintiffs in these cases, S.L. is not alleging that she received inadequate treatment for her underlying autism or related disabilities. S.L. was seeking treatment not for her underlying disabilities but for an acute injury to her foot. Under the ADA and Section 504, she was entitled to meaningful access to the same services that the hospital offered to non-disabled individuals with similar injuries - including to reasonable modifications to hospital policies and procedures where necessary to ensure such access. 42 U.S.C. § 12182(b)(2)(A)(ii). As expert testimony will explain in further detail, S.L. was unable to benefit from the services the hospital offered without reasonable modifications to help her tolerate the procedure.

People with disabilities are entitled to reasonable modifications where necessary to afford them meaningful access to the same health services offered to others - even when those modifications involve provision of substantial additional services. In *Henrietta D. v. Bloomberg*, the Second Circuit upheld am ADA and Section 504 judgment in favor of individuals with AIDS who had been denied "intensive case management and low case manager-to-client ratios," noting that these were not "additional or better" services than those offered to people with disabilities but merely reasonable modifications required to ensure "meaningful access to the same benefits and services" available to people without disabilities--including medical benefits. *See Henrietta*

11

*D. v. Bloomberg*, 331 F.3d 261, 273 (2d Cir. 2003) (quoting and upholding district court judgment in favor of plaintiffs).

### 3. BMC's decision to restrain S.L., forcibly medicate her, and detain her against her will was also discriminatory and not the result of medical judgment.

In addition to denial of reasonable modifications, the Amended Complaint includes ADA claims arising from BMC's inappropriate restraint of S.L., involuntary administration of antipsychotic medications and refusal to permit S.L. to leave the hospital. Am. Compl. ¶¶ 118-122.

Numerous courts have held that improper decisions to detain a disabled person in a hospital setting may violate the ADA or Rehabilitation Act, especially when they are based on improper assumptions about people with disabilities. This can include a belief that a person is experiencing a psychiatric crisis, when this belief is based on disability-related stereotypes rather than an individual's actual conduct. *See Green v. City of New York*, 465 F. 3d 65, 76-77 (2nd Cir. 2006) (city emergency services program violated ADA by forcibly transporting disabled man to hospital over his objections and disregarding his right to refuse treatment), *motion granted*, 2007 U.S. Dist. LEXIS 65842 (S.D.N.Y. Sept. 6, 2007), *vacated*, 359 Fed. Appx. 197 (2nd. Cir. 2009) (upholding the jury's verdict, which found that the City had violated plaintiff's rights under Title II of the ADA); *Bolmer v. Oliveria*, 594 F3d 134, 149 (2nd Cir. 2010) (allowing Title II claim against hospital to proceed, when plaintiff had been involuntarily hospitalized based on "stereotyped view of the mentally ill"); *Trimble v. Millwood Hospital*, CA 4:14-cv-00868-O (N.D. Tex. Sept. 12, 2016) (finding issue of material fact as to whether hospital's refusal to let a woman leave psychiatric hospital violated Rehabilitation Act).

Courts have also held that decisions to forcibly restrain or otherwise abuse a person with a disability may violate the ADA and Rehabilitation Act. *See K.T. v. Pittsburg Unified School District*, 219 F. Supp. 3d 970, 981 (N.D. Cal. 2016); *Taylor v. Richmond State Living Center*, 2012 U.S. Dist. LEXIS 170190 *16-17 (S.D. Tx., November 30, 2012).

### 4. Medical care is undisputedly a service, program, or activity conducted by Berkeley Medical Center.

Defendant also inexplicably cites *Bryant v. Madigan*, which upheld dismissal of a prisoner's ADA claims on the theory that the accommodation requested by the prisoner (guardrails on his bed to prevent falls due to his paraplegia) was not related to a "program or activity" offered by prisons and, additionally, expressing doubt that discrimination *by prisons* towards prisoners is covered by Title II. 84 F.3d 246, 248-49 (7th Cir. 1996). Not only is this case longer good law with respect to prisons themselves, *Pa. Dep't of Corrs. v. Yeskey*, 524 U.S. 206, 210 (1998) ("Modern prisons provide inmates with many recreational 'activities,' medical 'services,' and educational and vocational 'programs,'" all of which may be covered by Title II of the ADA), but also it is completely inapplicable to claims against a hospital, whose sole purpose is to provide medical services to the public.

### C. S.L. has adequately drawn a causal link between BMC's discriminatory conduct and her underlying disabilities.

Defendant further argues that S.L. has not adequately explained the connection between its discriminatory conduct and S.L.'s underlying disability. To the contrary, the Amended Complaint meticulously explains the connection between her disability and 1) her need for reasonable modifications, which BMC denied, and 2) BMC's decision to forcibly restrain her,

13

detain her in the hospital without the consent of her mother, and forcibly administer antipsychotic medications.

    **1. S.L.'s need for reasonable modifications, including anxiety management and pain management, directly arose from her disabilities.**

Under the Americans with Disabilities Act, a covered entity may not refuse to make reasonable modifications to policies, practices, or procedures if this denial results in "denial of the person's right to "the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation." 42 U.S.C. § 12182(a). The Rehabilitation Act also requires reasonable modifications where necessary to ensure that people with disabilities receive benefits that are "equal to that afforded others." 45 C.F.R. § 84.4(b)(ii). Courts have interpreted these two standards as functionally identical. *See, e.g.*, *Bennett-Nelson v. La. Bd. Of Regents*, 431 F.3d 448, 454-55 (5th Cir. 2005). Denial of modifications may violate the ADA or Section 504 even when such denial is not motivated by discriminatory animus. *Bennett-Nelson v. La. Bd. Of Regents*, 431 F.3d 448, 454-55 (5th Cir. 2005) ("Where a defendant fails to meet this affirmative obligation [to make reasonable accommodations or modifications], the cause of that failure is irrelevant."); *Dopico v. Goldschmidt*, 687 F.2d 644, 651-652 (2d Cir. 1982) (Section 504 requires "modest, affirmative steps" to increase accessibility of transit system and not just "evenhanded treatment"); *Henrietta D. v. Bloomberg*, 331 F.3d 261, 273 (2d Cir. 2003) ("We are . . . reluctant to interpret the 'by reason of such disability' language of the ADA and Rehabilitation Act . . . so narrowly that they deprive the plaintiffs of reasonable accommodations").[2] Indeed, even the one Title III case cited

---

[2] In the lengthy block quote cited by Defendant to support its argument that S.L. had not met her burden to show that BMC's discriminatory conduct was not connected to her disability, one case taken out of

by Defendant as requiring a "causal connection between the alleged discrimination and the individual's disability" acknowledged that "proof of a failure to provide reasonable accommodations that do not fundamentally alter may support a claim under Title III." *Bowers v. Nat'l Collegiate Athletic Ass'n*, 118 F. Supp. 2d 494, 517 (D.N.J. 2000).

Reasonable modifications can include modifications necessary to meet an individual's medical needs. *See United States v. Georgia*, 546 U.S. 151, 157 (2006) (failure to accommodate prisoner's medical needs may have violated ADA); *Bryant v. Madigan*, 84 F.3d 246, 249 (7th Cir. 1996) ("Standards of medical care are not irrelevant" to ADA, as failure to accommodate medical needs can result in exclusion from programs or activities); *Taylor v. Richmond State Living Center*, 2012 U.S. Dist. LEXIS 170190 *16-17 (S.D. Tx., November 30, 2012) (plaintiffs stated ADA claim against state supported living center that had failed to provide treatment, services, nursing, and medical care "commensurate with [plaintiff's] unique and individualized needs" and by physically abusing the plaintiff).

Moreover, failure to accommodate such needs will the ADA and Section 504 not only if it results in complete denial of access to services, programs, or activities, but also when it results in a denial of "meaningful access" to such services, programs, or activities. *See Marisol A. by Forbes v. Giuliani*, 929 F. Supp. 662, 685 (S.D.N.Y. 1996) (plaintiffs had stated a valid claim

---

context refers to an absence of "discriminatory animus or ill will." *Nails v. Laplante,* 596 F. Supp 2d 475, r481–82 (D. Conn 2009) (cited by *Gordon v. Tygart Valley Reg'l Jail*, No. 3:12CV34, 2013 WL 786480, at *11 (N.D.W. Va. Feb. 4, 2013)). Like all cases in this long citation, *Nails* concerned a Title II claim by a prison inmate. The plaintiff money damages against a state, and the court held that such claims were barred by sovereign immunity unless "the plaintiff can establish that the Title II violation was motivated by either discriminatory animus or ill will due to disability." *Nails*, 596 F. Supp 2d at 481 (quoting *Garcia v. S.U.N.Y. Health Sciences Center of Brooklyn,* 280 F.3d 98, 111 (2d Cir. 2001)) (internal quotations omitted). Because BMC is not entitled to sovereign immunity, S.L. need not allege that its conduct was motivated by animus or ill will.

under ADA and Section 504 against a child welfare agency that had failed to meaningfully assess and address children's medical needs, resulting in inappropriate placements and denial of adequate medical care). "Access alone" is insufficient. *Id.; see also Alexander v. Choate*, 469 U.S. 287, 301, 304 (1985); *Henrietta D.*, 331 F.3d at 273 ("the relevant inquiry asks . . . whether those with disabilities are as a practical matter able to access benefits to which they are legally entitled"); *Wolford by Mackey v. Lewis*, 860 F. Supp. 1123, 1135 (S.D. W. Va. 1994) (Section 504 may require reasonable modifications to healthcare programs as necessary to ensure meaningful access to care).

The Amended Complaint adequately explains that S.L. required reasonable modifications as a direct result of her disabilities; that these reasonable modifications were necessary in order for the Plaintiff to receive the same benefit from the suture procedure as people without disabilities; that these reasonable modifications would have been effective to enable her to benefit from the suture procedure without the use of restraints or strong sedatives; and that denial of these modifications directly led to S.L.'s attempts to leave the treatment room and subsequent exposure to painful restraints and forcible medication. Am. Compl. ¶¶ 30-33, 36-42, 50-55. *See Henrietta D.*, 331 F.3d at 277 ("the demonstration that a disability makes it difficult for a plaintiff to access benefits that are available to both those with and without disabilities is sufficient to sustain a claim for a reasonable accommodation."). The Amended Complaint also contains adequate factual allegations to support a conclusion that these modifications were reasonable and not an undue burden to the hospital, namely: these accommodations are common for autistic individuals, S.L. had previously received these accommodations at BMC, they are medications readily available in most emergency rooms, they are medically appropriate, and

BMC did not indicate they were unavailable at that time. Am. Compl. ¶¶ 33, 37, 48, 49. These allegations are more than enough to state a claim for disability discrimination based on failure to provide reasonable modifications to policies, practices, or procedures.

### 2. BMC's discriminatory conduct in restraining S.L., detaining her, and forcibly administering medication was directly connected to S.L.'s disabilities.

The Amended Complaint also alleges that BMC's decision to restrain and forcibly medicate S.L. had the effect of denying her access to equal benefits and services to those afforded to people without disabilities. Am. Compl. ¶ 121. As noted in Section B above, such conduct is routinely recognized by courts as a potential violation of the ADA and Section 504, even in healthcare contexts. The Amended Complaint also adequately connects this conduct on the part of BMC to S.L.'s disability.

To state such a claim under the ADA based on misconduct towards a person with a disability, such as abuse or inappropriate use of restraint, a plaintiff need only include plausible assertions that the misconduct was "because of" or "due to" the person's disabilities. For example, in *Taylor v. Richmond State Supported Living Ctr.*, the estate of an intellectually disabled man alleged that defendant's staff had targeted the man for abuse as a result of his "profound and unusual disabilities, such as his oppositional behaviors and his inability to communicate his thoughts, needs, or concerns." No. 4:11-3740, 2012 U.S. Dist. LEXIS 170190, at *15 (S.D. Tex. Nov. 30, 2012). The district court held that such allegations were adequate to state a claim under the ADA and Section 504.

As in the case of claims based on denial of reasonable modifications, there is no additional requirement that the person with a disability show "hostile discriminatory purpose or

subjective intent to discriminate solely on the basis of handicap." *Pushkin v. University of Colorado,* 658 F.2d 1372, 1385 (10th Cir. 1981). Indeed, "discrimination on the basis of handicap usually results from more invidious causative elements and often occurs under the guise of extending a helping hand or a mistaken, restrictive belief as to the limitations of handicapped persons." *Id.*

The Amended Complaint clearly explains that Defendant staff were aware of S.L.'s disability at all relevant times. Am. Compl. ¶ 28. Moreover, staff additionally perceived S.L. to have additional disabilities: at the time that Berkeley staff restrained S.L., they stated to S.L.'s mother that she was "psychotic" and in need of restraint, and threatened to call the police. *Id.* ¶¶ 65, 67. They also forcibly prevented S.L. and D.L. from leaving the hospital, despite D.L.'s statement that she planned to seek treatment elsewhere and the fact that S.L. was sufficiently medically stable to wait several hours for treatment. *Id.* ¶¶ 45, 52. BMC staff then brought S.L. to a locked room typically used for patients in psychiatric crisis. ¶ 75. There, they administered psychoactive medications. ¶¶ 77-80.

These allegations all reasonably support the conclusion that that BMC's conduct was the result of S.L.'s actual or perceived disabilities. *See Green*, 465 F.3d at 76-77; *Bolmer,* 594 F.3d at 149; *K.T.*, 219 F. Supp. 3d at 981; *Trimble*, CA 4:14-cv-00868-O. To the extent that Defendant plans on advancing the startling argument that its staff would also have forcibly restrained and sedated a nondisabled thirteen-year-old with a minor injury who walked out into a hallway and expressed an interest in seeking treatment elsewhere, this argument is better resolved after both sides have had the benefit of discovery rather than on the pleadings. *See*

*Taylor*, 2012 U.S. Dist. LEXIS 170190, at *17-18 (Plaintiffs' failure to identify a comparison group who received more favorable treatment did not merit dismissal on the pleadings).

### 3. The string of Title II prison litigation cited by Defendant is irrelevant to the facts of this case.

In their argument that S.L.'s claims inadequately articulate a connection between her disability and BMC's discriminatory conduct, Defendant primarily relies on a lengthy block quote from *Gordon v. Tygart Valley Regional Jail,* which concerned a Title II ADA claim against a local jail. This block quote specifically concerns ADA suits by prisoners that "do not allege that the inmate was treated differently because of his or her disability." No. 3:12CV34, 2013 U.S. Dist. LEXIS 28445, at *30, 31 (N.D.W. Va. Feb. 4, 2013). Accordingly the cases cited within this quote predominantly concern Title II claims by inmates who did not actually allege that they were denied access to services or programs available to inmates without disabilities. *See Atkins v. County of Orange*, 251 F. Supp. 2d 1225, 1232 (S.D.N.Y. 2003); *Gavin v. Cook*, No. 00–CV–29, 2000 WL 1520231, at *6–7 (D. Or. Oct. 3, 2000); *Moore v. Prison Health Servs., Inc.*, 24 F.Supp.2d 1164, 1168 (D. Kan. 1998). Likewise, the court in *Gordon* dismissed the plaintiff's claims based on its determination that "plaintiff has not sufficiently alleged that he was excluded from participation in a program or activity." *Gordon*, 2013 U.S. Dist. LEXIS 28445 at *34.

The court in *Gordon* explicitly acknowledges, however, that an ADA claim may proceed, even with respect to medical treatment, if the complaint alleges that an individual "has been denied services that might have been provided to other" similarly situated individuals. *Gordon,* 2013 U.S. Dist. LEXIS 28445 at *33. As discussed in detail above, S.L. has adequately alleged

19

that she *was* treated differently because of her disability and was denied reasonable modifications that she needed as a result of her disability.

WHEREFORE, Plaintiff respectfully requests that this Court enter an order denying Defendant's Motion to Dismiss.

Respectfully submitted and dated this 14th day of December, 2018.

**S.L., A MINOR, BY AND THROUGH HER PARENT AND LEGAL GUARDIAN D.L.**

**By Counsel**

/S/  Shawna White
BAR No. 10893
Disability Rights of West Virginia
1207 Quarrier Street
Charleston, WV 25301