IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

S.L., A MINOR, BY AND THROUGH
HER PARENT AND LEGAL GUARDIAN, D.L.,

    Plaintiff,

v.                                                  CIVIL ACTION NO. 3:18-CV-162
                                                    (Groh)

CITY HOSPITAL, INC., d/b/a,
BERKELEY MEDICAL CENTER,
A subsidiary of WEST VIRGINIA UNIVERSITY
HOSPITALS-EAST, INC., d/b/a
WV UNIVERSITY HEALTHCARE;
BRANDT WILLIAMSON, M.D.,
MISTY HUNSADER, PA-C;
SMOKY MOUNTAIN EMERGENCY
SERVICES, INC.; and
HEALTH CARE ALLIANCE, INC.,

    Defendants.

**PLAINTIFF'S RESPONSE MEMORANDUM IN
OPPOSITION TO BERKELEY MEDICAL CENTER'S MOTION TO DISMISS THE
SECOND AND RELATED PARTS OF THE FOURTH CAUSE OF ACTION OF
<u>PLAINTIFF'S THIRD AMENDED COMPLAINT</u>**

    **NOW COMES** the Plaintiff, S.L., a minor, by and through her parent and legal guardian D.L., and by and through her counsel, hereby submits her Memorandum in Opposition to Defendant's Motion to Dismiss and states as follows:

1

**I.    Preliminary Statement and Factual Background**

S.L., an autistic teenager, visited Berkeley Medical Center ("BMC") on October 12, 2016, seeking medical care for an injury to her foot. Third Am. Compl. (Doc. 74), ¶¶ 21, 24, 25. D.L. informed the nurse at the desk and triage, the attending nurse, and the attending PA-C that S.L. was autistic and because of S.L.'s disability, S.L. was likely to experience severe anxiety while receiving sutures. *Id.* at 26.

As a result of her autism and related disabilities, S.L. could not tolerate the suture procedure without basic disability accommodations, such as anxiety management and topical anesthetic. *Id.* at 23, 26, 29. BMC staff refused to provide these accommodations, not because they felt these accommodations would be contraindicated but because they did not wish to spend any additional time on treating S.L. *Id*. at 39, 40, 41, 42, 43, 44, 45.

When S.L. became distressed at the idea of receiving sutures without the accommodations she needed, her mother, D.L., withdrew consent for treatment and stated her intent to obtain care at another hospital. *Id.* at 46, 47. BMC refused to permit S.L. or her mother to leave and, in cooperation with employees of the hospital's emergency room department ("ED"), instead sent numerous staff members to forcibly restrain S.L. and administer injectable antipsychotic medications against her will and without her consent, before ultimately administering sutures to S.L.'s foot. *Id.* at 48-82. Due to the contemporaneous statements of BMC staff, S.L. and her mother reasonably believe that BMC's and the ED contractor's actions in detaining and restraining S.L. were based on discriminatory and stereotypical attitudes toward children with disabilities like S.L., and that a child without disabilities expressing similar distress would not have been forcibly restrained.

## II. Procedural History

On April 22, 2020, D.L. moved this Court for leave to file her Third Amended Complaint adding parties and adding a cause of action under the West Virginia Medical Professional Liability Act, W. Va. Code § (Doc 68). On May 13, 2020, this Court granted that motion (Doc. 73). BMC now moves to dismiss certain of the plaintiff's claims against it arguing that the Second Cause of Action fails to state a claim for relief against BMC, that BMC is not the appropriate defendant against which a failure to accommodate claim can be made that D.L. has failed to plead facts supporting a claim of discrimination based on S.L.'s disability as required by the Rehabilitation Act, and that, if the Second Cause of Action is dismissed, the Fourth Cause of Action must also be dismissed. As discussed *infra*, none of these claims have merit. In each case, BMC is either wrong in its discussion of the law or mistakenly invites the Court to resolve factual disputes on a motion to dismiss.

## III. Applicable law: Federal Rule of Civil Procedure 12(b)(6)

At this stage, Plaintiff must merely state facts that give rise to a claim that is "plausible on its face." *Bell Atl. Corp v. Twombly*, 550 U.S. 544, 570 (2007). For the purposes of a motion to dismiss, courts must accept the allegations in the Complaint as true and must liberally construe the Complaint in favor of the Plaintiff. *Mylan Labs, Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993). A 12(b)(6) motion to dismiss "is not a procedure for resolving a contest about the facts or the merits of the case," and "must be distinguished from a motion for summary judgment under Federal Rule of Civil Procedure 56, which goes to the merits of the claim and is designed to test whether there is a genuine issue of material fact." *Rich v. Life Ins. Co. of N. Am.*, No. 3:12-CV-92, 2013 U.S. Dist. LEXIS 44601, at *8, 9, 10 (N.D.W. Va. March 28, 2013). Such motions are granted "only in very limited circumstances." *Rogers v. Jefferson-Pilot Life Ins. Co.*, 883 F.2d

324, 325 (4th Cir. 1989). Indeed, "a motion to dismiss for failure to state a claim should not be granted unless it appears certain that the plaintiff can prove no set of facts which would support its claim and would entitle it to relief." *Mylan Labs, Inc.*, 7 F.3d at 1134.

IV. Argument

    A.   BMC is an appropriate defendant for S.L.'s Second Cause of Action and the "sole reason" argument advanced by BMC does not apply to the facts of this case.

        1. BMC is a proper defendant for D.L.'s case under the Rehabilitation Act.

BMC is a proper defendant in this case. Although the ED may be staffed, in part, by certain non-BMC employees who are employees of the contract medical providers that are co-defendants in this case, the violations of the Rehabilitation Act at issue involve employees of both BMC and the ED. Thus, the allegations in the Third Amended Complaint are not limited to the acts and omissions of the ED contract employees. To the contrary, those allegations include the wrongful acts of BMC employees. *See, e.g.*, Third Am. Comp., ¶¶ 27, 28, 32, 33, 51, 52, 53, 55, 56, 58, 60, 62, 63, 64, 75, 76, 77, 117. In particular, *see id.* at 69-70 that allege that BMC nurses administered injections to S.L. without providing the requested reasonable accommodations and without the permission of S.L.'s mother. The Third Amended Complaint also alleges that D.L.'s request for an accommodation for S.L. was denied by a BMC staff nurse because there was "no time," not because a medical professional determined that the requested accommodation was medically contraindicated. *Id.* at 40. Moreover, BMC staff did not offer S.L. any alternate accommodations to alleviate her anxiety. These allegations support a reasonable inference that the denial of a reasonable accommodation was not based on the medical judgment of the ED contract physician, but rather on the unwillingness of BMC staff to provide the accommodation.

4

Thus, BMC is liable in *respondeat superior* for the acts of its employees that led to the denial, in whole or in part, of D.L. and S.L.'s request for reasonable accommodations.

Also, contrary to the argument of BMC, D.L. does not purport to "make out a claim under 504 merely by proving 'that [her daughter] was denied some service and [she] is disabled.'" BMC Memorandum of Law in Support of its Motion to Dismiss the Second Cause and Related Parts of the Fourth Cause of Action of Plaintiff's Third Amended Complaint ("BMC Memorandum") at p. 5-6 (Doc. 81-1), citing from *Lindstrom v. St. Josephs Sch. for the Blind, Inc.*, CV 15-8084 (ES), 2016 WL5723658 at *5 (D.N.J. Sept. 30, 2016). To the contrary, Plaintiff's claims are based on well-recognized legal theories under the Rehabilitation Act including, but not limited to, the failure of BMC to provide reasonable accommodations to S.L. so that she could receive the medical care she needed.

BMC's argument that the accommodations S.L. requested were a matter of medical judgment is duplicative of its argument in its earlier Motion to Sismiss, which this court declined to resolve at the pleading stage. *See* Order Granting Motion to Dismiss in Part, Feb. 22, 2019 at 10-11 (Doc. 26) ("These allegations are more than claims of inadequate medical care. ... Accordingly, whether the Defendant's medical decisions were reasonable or discriminatory is a question of fact that the Court will not decide at the pleading stage.").

BMC also argues that its employees could not have violated the Act because BMC staff "were not responsible for the medical decisions or judgments associated with providing or denying the 'reasonable accommodation to S.L.'" BMC Memorandum, p. 7. D.L. questions BMC's statement of the law as one does not have to be a doctor to prevent or deny a reasonable accommodation. For example, hospital personnel may prevent a request for an accommodation by failing to communicate the request to the doctor or by otherwise preventing the

implementation of the requested accommodation. As demonstrated above, BMC nurses and other employees were involved in the rejection of S.L.'s request for accommodations, whatever the role, if any, of the ED contractor doctor. BMC employees were also involved in the discriminatory response to S.L.'s distress and her attempt to leave the hospital when they restrained S.L. and forcibly injected sedatives. Moreover, as alleged in the Third Amended Complaint, the decision to deny S.L.'s requested accommodations were not necessarily a matter of medical judgment in the present case.

Finally, given the allegations in the Complaint that must be taken as true, this issue is best addressed at the conclusion of discovery in a motion for summary judgment if BMC deems such a motion to be appropriate at that time.

### 2. The Complaint adequately pleads failure to provide a reasonable accommodation under the Rehabilitation Act.

BMC argues S.L.'s Section 504 claim should be dismissed because the Third Amended Complaint fails to claim that the refusal of Ativan and topical Lidocaine were "pretextual," and because there are "no allegations that support an inference that Lidocaine cream and oral Ativan were refused by BMC because of S.L.'s disabilities." BMC Memorandum, p. 8.[1] However, BMC fails to cite cases that directly support its argument that a decision to deny reasonable accommodations must somehow be pretextual or based on a patient's disability in order to constitute a violation of the Rehabilitation Act. In fact, the Rehabilitation Act contains no such requirements.

---

[1] BMC raised this argument, without success, in its Reply to its earlier Motion to Dismiss. BMC Reply to Plaintiff's Response to Defendant's Motion to Dismiss, 11. (Doc. 25).

BMC's error results from its misunderstanding of the nature of this aspect of D.L.'s case. Healthcare providers may violate the ADA or Section 504 through any facially discriminatory denial of services. In such cases, the plaintiff challenges a denial of services contending that the denial was motivated by the plaintiff's disability and that any reason offered by the defendant for the denial of services was a pretext for discrimination. Alternatively, as in this case, the plaintiff may contend that she requested and was denied a reasonable accommodation necessitated by her disability where necessary to ensure meaningful access to care. Section 504 requires reasonable accommodations where necessary to ensure that people with disabilities receive benefits that are "equal to that afforded others." 45 C.F.R. § 84.4(b)(ii). In such cases, there is no requirement that benefits be denied to an individual because she has a disability. Nor is the plaintiff required to prove pretext. Instead, the courts have interpreted this standard as functionally identical to the reasonable modification or reasonable accommodation requirement in the ADA. [2] *See, e.g., Bennett-Nelson v. La. Bd. Of Regents*, which states:

> In addition to their respective prohibitions of disability-based discrimination, both the ADA and the Rehabilitation Act impose upon public entities an affirmative obligation to make reasonable accommodations for disabled individuals. Where a defendant fails to meet this affirmative obligation, the cause of that failure is irrelevant.

431 F.3d 448, 454-455 (5th Cir. 2005).

BMC errs in its analysis because it fails to recognize the difference between a case where the defendant is alleged to have discriminated against the person with a disability by denying services based upon the plaintiff's disability and a case, such as the present case, where the plaintiff alleges she was entitled to a reasonable accommodation. The former requires proof of

---

[2] Title III of the ADA uses "modification." Section 504 uses "accommodation". The terms, however, are essentially the same in a disability discrimination analysis. *See e.g., Paulone v. City of Frederick*, 787 F. Supp. 2d 360, 371 (D. Md. 2011).

pretext; the latter does not.  Reasonable accommodations can include accommodations necessary to meet an individual's medical needs.  *See United States v. Georgia*, 546 U.S. 151, 157 (2006) (failure to accommodate prisoner's medical needs may have violated ADA); *Bryant v. Madigan*, 84 F.3d 246, 249 (7th Cir. 1996) ("Standards of medical care are not irrelevant" to the ADA, as failure to accommodate medical needs can result in exclusion from programs or activities); *Taylor v. Richmond State Living Center*, 2012 U.S. Dist. LEXIS 170190 *16-17 (S.D. Tx., November 30, 2012) (plaintiffs stated an ADA claim against a state supported living center by alleging the center had failed to provide treatment, services, nursing, and medical care "commensurate with [plaintiffs'] unique and individualized needs.")

Thus, the denial of reasonable accommodations may violate Section 504 even when such denial is not motivated by discriminatory animus.  *Bennett-Nelson v. La. Bd. Of Regents*, 431 F.3d 448, 454-55 (5th Cir. 2005) cert denied 126 S. Ct. 1888 (2006) ("Where a defendant fails to meet this  affirmative obligation [to make reasonable accommodations], the cause of that failure is irrelevant."); *Dopico v. Goldschmidt*, 687 F.2d 644, 651-652 (2d Cir. 1982) (Section 504 requires "modest, affirmative steps" to increase accessibility of transit system and not just "evenhanded treatment"); *Henrietta D. v. Bloomberg*, 331 F.3d 261, 273 (2d Cir. 2003) ("We are . . . reluctant to interpret the 'by reason of such disability' language of the ADA and Rehabilitation Act . . . so narrowly that they deprive the plaintiffs of reasonable accommodations"); *Falls v. Prince George's Hosp. Ctr.*, Civ. Action No. 97-1545, 1999 U.S. Dist. LEXIS 22551, at *27 (D. Md. Mar. 16, 1999) (denial of an interpreter constituted intentional discrimination even if motivated by "thoughtlessness and indifference" rather than hostility).  Failure to make a reasonable accommodation will therefore violate Section 504 even

if the subjective motivation is an unwillingness to expend additional effort on the accommodation rather than a conscious desire to harm people with disabilities.

Moreover, accommodations are often considered reasonable under the Rehabilitation Act even if they occasionally require additional staff time to provide. In *Henrietta D.*, the Second Circuit upheld an ADA and Section 504 judgment in favor of individuals with AIDS who had been denied "intensive case management and low case manager-to-client ratios," noting that these were not "additional or better" services than those offered to people with disabilities but merely reasonable accommodations required to ensure "meaningful access to the same benefits and services" available to people without disabilities." 331 F.3d at 273 (quoting and upholding district court judgment in favor of plaintiffs). Thus, a covered entity may violate the Rehabilitation Act by denying a reasonable accommodation even if it is subjectively motivated by an unwillingness to expend extra effort and resources on an accommodation rather than by hostility to people with disabilities.

The "persuasive authority" that BMC cites does not actually support its claim that denial of a reasonable accommodation must be based on discriminatory intent. Rather, as noted above, the cases upon which BMC relies at page 9 of the BMC Memorandum do not involve or address claims based on the failure to provide a reasonable accommodation in the context of S.L.'s presentation at the ED. The cases all involve outright denials of treatment. Neither *A.R. v. Kogan*, 964 F. Supp. 269 (N.D. Ill. 1997); *Sharrow v. Bailey*, 910 F. Supp. 187 (M.D. Pa. 1995); nor *Glanz v. Vernick*, 750 F. Supp. 391 (D. Mass, 1990) even include the words "reasonable accommodation" in their respective opinions. The fourth case, *Sumes v. Andres*, 938 F. Supp. 9, 12 (D.D.C. 1996), does reference reasonable accommodation, but it does so in an entirely

different context than that posed in the present case. In *Sumes,* the patient was not directly challenging a failure to provide a reasonable accommodation. Instead, she was challenging an outright refusal to provide medical care. The court did note that a reasonable accommodation would have enabled her to benefit from medical care without additional risks. *Id*. at 11. However, it did not hold that discriminatory intent is required in the tradition reasonable accommodation case.

The Third Amended Complaint adequately explains that S.L. required reasonable accommodations as a direct result of her disabilities; that these reasonable accommodations were necessary in order for S.L. to receive the same benefit from the suture procedure as people without disabilities; that these reasonable accommodations would have been effective to enable her to benefit from the suture procedure without the use of restraints or strong sedatives; and that denial of these accommodations directly led to S.L.'s attempt to leave the treatment room and subsequent exposure to painful restraints and forcible medication. Third Am. Compl. ¶¶ 21, 22, 23, 26, 29, 34-38, 46-52. *See Henrietta D.*, 331 F.3d at 277 ("the demonstration that a disability makes it difficult for a plaintiff to access benefits that are available to both those with and without disabilities is sufficient to sustain a claim for a reasonable accommodation."). The Third Amended Complaint also contains adequate factual allegations to support a conclusion that these accommodations were reasonable and not an undue burden to the hospital, namely: S.L. had previously received these accommodations at BMC, the requisite medications are readily available in most emergency rooms, the medications requested are medically appropriate, and BMC did not claim that the medications were unavailable at that time. Third Am. Compl. ¶¶ 30-38, 40-45. These allegations are more than sufficient to state a claim for disability discrimination based on failure to provide reasonable accommodations. Defendants also appear

to argue that, because the nurse claimed there was "no time" to provide the accommodations that S.L. requested, the only possible inference is that provision of those accommodations was actually not possible or reasonable under the circumstances. However, the Third Amended Complaint states sufficient facts to support an inference that the decision was not based on medical urgency because at that point S.L. had been waiting for over an hour for treatment and was in stable medical condition. *Id.* at 27, 40-41. In any case, this is not a proper issue to resolve on a motion to dismiss at this stage of the proceedings.

BMC argues that "S.L.'s preferred medications or method of treatment was not within the ken of the BMC nursing staff . . ." BMC Memorandum, p. 7. BMC continues by arguing that BMC staff were not responsible for the medical decisions or judgments associated with providing or denying the 'reasonable accommodation' to S.L. *Id.* Nonetheless, it is not entirely clear at this stage of the proceedings who was responsible for the various decisions and actions during the relevant time period. One thing, however, is clear: employees of both the ED contractors and BMC were involved in the acts and omissions of October 12, 2016. As a result, the respective responsibilities of ED contractors and BMC employees should not be determined by the Court at this stage of the proceedings.

### 3. S.L. has adequately alleged that she was prevented from leaving the emergency department, restrained, and forcibly administered psychotropic medications solely based on her disability.

BMC asserts Plaintiff's claims that BMC violated the Rehabilitation Act by preventing her from leaving the ED, restraining her, and administering injections of Ativan and Geodon cannot stand because these actions were not "solely on" the basis of S.L.'s disability. BMC Memorandum, p. 10-11. BMC claims that because the "factual catalyst" for its decision to

restrain S.L. was that she "became upset and attempted to leave," BMC's actions were not based "solely on" S.L.'s disability. *Id.* at 10. This argument is basically duplicative of BMC's argument in BMC's first Motion to Dismiss in November 2018. *See* BMC Memorandum in Support of its Motion to Dismiss, p. 13 (Doc. 19-1) ("Because Plaintiff's First Amended Complaint fails to make a connection between the actions or omissions of BMC and Plaintiff's Autism, Attention Deficit Hyperactivity Disorder, mild intellectual disability, and anxiety disorder, her First Amended Complaint must be dismissed for failure to state a claim upon which relief may be granted"). This court has already rejected that argument with respect to the First Amended Complaint and instead stated that it would not resolve the factual dispute between the parties at this pleading stage. *See* Order Granting Motion to Dismiss in Part, (Doc. 26) Feb. 22, 2019 at 12. The relevant parts of the First Amended Complaint and the Third Amended Complaint are essentially identical.

To the extent that this Motion raises any new arguments relating to the causal connection between BMC's conduct and S.L.'s disability, these arguments should similarly be rejected. The Third Amended Complaint demonstrates that: (1) S.L.'s conduct was directly and solely caused by defendants' combined failure to provide reasonable accommodations for S.L. autism; and (2) BMC staff based their decision to restrain S.L. on her disability. As such, BMC's Section 504 liability for restraining S.L., preventing her from leaving the hospital, and forcibly medicating her rests on two theories: first, that it was the direct result of defendants' failure to provide reasonable accommodations, and second, that it denied S.L. the right to benefit from treatment that was equal and/or equally effective to that afforded to others without disabilities. Third Am. Compl. ¶¶ 117-120.

As Plaintiff has already explained in Section A.2, to succeed on a claim based on failure to provide reasonable accommodations a plaintiff need not establish pretext or discriminatory animus. Plaintiff also has pled sufficient facts to support her claim that BMC's conduct toward her deprived her of her right to treatment that was equal to and/or equally effective as that afforded to others.

"Claims under the ADA's Title II and the Rehabilitation Act can be combined for analytical purposes because the analysis is substantially the same." *Wicomico Nursing Home v. Padilla,* 910 F.3d 739, 750 (4th Cir. 2018). One distinguishing factor between the Rehabilitation Act and Title II of the ADA is that under the Rehabilitation Act, the conduct must be "solely" due to the individual's disability. *Id.* Discriminatory conduct within the meaning of Section 504 need not be based in discriminatory animus towards individuals with disabilities. *Pushkin v. Regents of University of Colo.*, 658 F.2d 1372, 1385 (10th Cir. 1981) ("It would be a rare case indeed in which a hostile discriminatory purpose or subjective intent to discriminate solely on the basis of handicap could be shown. Discrimination on the basis of handicap usually results from more invidious causative elements and often occurs under the guise of extending a helping hand or a mistaken, restrictive belief as to the limitations of handicapped persons"); *Liese v. Indian River County Hosp. District*, 701 F. 3d 334, 344-348 (11th Cir. 2012) (finding that a standard of "deliberate indifference" was sufficient to find that intentional discrimination under the Rehabilitation Act could have occurred).

When a discrimination claim arises from abuse or inappropriate use of restraint, a plaintiff may show that the discrimination was based "solely" on disability even if the plaintiff's disability-related behavior was a precipitating event. For example, in *Taylor v. Richmond State*

13

*Supported Living Ctr.*, the estate of an intellectually disabled man alleged that the defendant's staff had targeted the man for abuse as a result of his "profound and unusual disabilities, such as his *oppositional behaviors* …." No. 4:11-3740, 2012 U.S. Dist. LEXIS 170190, at *15 (S.D. Tex. Nov. 30, 2012) (emphasis added). The district court held that such allegations were adequate to state a claim under the ADA *and* Section 504. Courts also have held that decisions to forcibly restrain or otherwise abuse a person with a disability may violate the Rehabilitation Act, even when based on disability-related behaviors. *See K.T. v. Pittsburg Unified Sch. Dist.*, 219 F. Supp. 3d 970, 981 (N.D. Cal. 2016) (abuse of the plaintiff that was prompted by manifestation of disability "is enough to satisfy even the Rehabilitation Act's heightened causation standard"); *Taylor v. Richmond State Supported Living Ctrr*, 2012 U.S. Dist. LEXIS 170190 *16-17 (S.D. Tx., November 30, 2012) (finding that when mistreatment was due to *plaintiff's* actions, which were manifestations of the plaintiff's disability, the plaintiff nonetheless prevailed).

In the present case, S.L. has adequately pled that: (1) she would not have become upset or attempted to exit if it were not for BMC's failure to provide reasonable accommodations; (2) her conduct was caused solely by her unaccommodated disability; and (3) BMC would not have restrained or forcibly medicated a person without a disability who became upset and attempted to leave. This is sufficient to show that BMC's conduct was based solely on S.L.'s disability. In fact, if the facts of the Third Amended Complaint are accepted as true, it is nearly the only conclusion that could be drawn.

The Third Amended Complaint clearly explains that BMC staff were aware of S.L.'s primary disability - autism - at all relevant times. Third Am. Compl. ¶ 26. As the Third

Amended Complaint states, S.L. "became upset" and left the patient care room because hospital staff refused to provide her with the reasonable accommodations she and her mother requested - Ativan and topical Lidocaine. *Id.* at 46, 48. Moreover, staff assumed S.L. had other disabilities based on their observations of her; at the time that BMC staff restrained S.L., they stated to S.L.'s mother that she was "psychotic" and in need of restraint, and threatened to call the police. *Id.* at 58, 59, 60. The Court must accept that this allegation is true at this pleading stage. Defendants also forcibly prevented S.L. and D.L. from leaving the hospital, despite D.L.'s withdrawal of consent to treatment and her clear statement she planned to seek treatment elsewhere and despite the fact that S.L. was medically stable. *Id.* at 47, 52. BMC staff then brought S.L. to a locked room that, to the best of our knowledge, is used for patients in psychiatric crisis. *Id.*, 65, 66. There, they administered psychoactive medications. *Id.*, 69-70. The Third Amended Complaint further alleges that "[t]he decision to restrain S.L. and administer Ativan and Geodon injections without D.L.'s consent was based on the perception by the BMC and/or ED contractor staff that S.L. had a disability." *Id.* at 107. These allegations all reasonably support the conclusion that BMC's conduct was solely the result of S.L.'s actual or perceived disabilities. *See K.T. v. Pittsburgh Unified Sch. Dist.*, 219 F. Supp. 3d at 981; *Trimble v. Millwood Hosp.* CA 4:14-cv-00868-O (N.D. Tex. Sept. 12, 2016) (finding issue of material fact as to whether hospital's refusal to let a woman leave psychiatric hospital violated Rehabilitation Act).

To the extent that Defendants plans on arguing that S.L.'s conduct was not based on her unaccommodated disability, or that its response to S.L. was based on some factor other than her disability, this argument cannot be resolved at the pleading stage, when the Court must accept

the facts in the Third Amended Complaint as true and construe them in favor of the Plaintiff. *Mylan Labs, Inc. v. Matkari*, 7 F.3d at 1134; *Trimble v. Millwood Hosp.*, 420 F. Supp. 3d 550, 561 (N.D. Tex. Sept. 12, 2016) (determining even at the later summary judgment stage that "when considering whether the alleged statutory violations occurred because of her qualifying disability," it had impermissibly made an inference regarding the facts in favor of the movant). BMC's attempts to dismiss the case upon these grounds, rather than during discovery during which the Plaintiff and counsel would be given time to depose persons with information on the justifications for the actions of medical and security personnel, are painfully premature.

                                                            PLAINTIFF,
                                                            BY COUNSEL

/s/ *Allan N. Karlin*                                 /s/ *Samantha Crane*
ALLAN N. KARLIN, WV BAR # 1953         SAMANTHA CRANE, DC BAR # 1000447
JANE E. PEAK, WV BAR #7213              AUTISTIC SELF ADVOCACY NETWORK
ALLAN N. KARLIN & ASSOCIATES          1010 VERMONT AVENUE, STE 618
PLLC                                                WASHINGTON, DC 20005
174 CHANCERY ROW
MORGANTOWN, WV 26505
304-296-8266

/s/ *Shawna White*
SHAWNA WHITE, WV BAR # 10893
DISABILITY RIGHTS OF WEST VIRGINIA
1207 QUARRIER STREET
CHARLESTON, WV 25301

## CERTIFICATE OF SERVICE

      I, Allan N. Karlin, do hereby certify that on June 22, 2020, I electronically filed, via the CM/ECF system, the "Plaintiff's Response to City Hospital, Inc. d/b/a Berkeley Medical Center's Motion to Dismiss the Second and Related Parts of the Fourth Cause of Action of Plaintiff's Third Amended Complaint" which will send notification to the following:

Joshua K. Boggs (WV Bar # 10096)  
Christine S. Vaglienti (WV Bar # 4987)  
Lauren T. Krupica (WV Bar # 11719)  
West Virginia United Health System, Inc.  
1238 Suncrest Towne Centre Drive  
Morgantown, WV 26505  
304-598-9888  

Tamela White, Esq.  
Farrell White & Legg  
914 Fifth Avenue  
PO Box 6457  
Huntington, WV 25772-6457  

                                      PLAINTIFF,  
                                      BY COUNSEL.

/s/ *Allan N. Karlin*  
ALLAN N. KARLIN, WV BAR # 1953  
JANE E. PEAK, WV BAR #7213  
ALLAN N. KARLIN & ASSOCIATES PLLC  
174 CHANCERY ROW  
MORGANTOWN, WV 26505  
PH: 304-296-8266  
FAX: 304-296-8640  
ank@wvjustice.com  
jep@wvjustice.com