IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

S.L., A MINOR, BY AND THROUGH
HER PARENT AND LEGAL GUARDIAN D.L.

Plaintiff,

v.                                          CIVIL ACTION NO. 3:18-CV-162
                                            Honorable Gina M. Groh

CITY HOSPITAL, INC., d/b/a,
BERKELEY MEDICAL CENTER,
A subsidiary of WEST VIRGINIA UNIVERSITY
HOSPITALS-EAST, INC., d/b/a
WV UNIVERSITY HEALTHCARE;
BRANDT WILLIAMSON, M.D.;
MISTY HUNSADER, PA-C;
SMOKY MOUNTAIN EMERGENCY
SERVICES, INC.; and
HEALTH CARE ALLIANCE, INC.,

                        Defendant.

**PLAINTIFF'S RESPONSE MEMORANDUM IN OPPOSITION TO DEFENDANTS
MISTY HUNSADER, PA-C, BRANDT WILLIAMSON, M.D., SMOKY MOUNTAIN
EMERGENCY SERVICES, INC. AND HEALTH CARE ALLIANCE, INC.'S MOTION
TO DISMISS**

        NOW COMES the Plaintiff, S.L., a minor, by and through her parent and legal guardian D.L.,

by and through her counsel, hereby responds to Defendants Misty Hunsader PA-C, Brandt

Williamson, M.D., Smoky Mountain Emergency Services, Inc. ("Smoky Mountain"), and Health

Care Alliance, Inc. ("Alliance"), (hereinafter collectively "ED Defendants") Memorandum of Law

in support of its Partial Motion to Dismiss Plaintiff's Third Amended Complaint (Doc. 95-1) ("ED

Defendants' Memorandum").  Plaintiff states that she will file a motion to withdraw her claim

against Misty Hunsader in the First Cause of Action regarding violations of the Americans with

Disability Act without prejudice.  However, Plaintiff's claims asserted against the other ED

Defendants in the First Cause of Action and against all ED Defendants in the Second and Fourth Causes of Action are well pled and well founded and should not be dismissed on a motion to dismiss.

## I.      PRELIMINARY STATEMENT AND FACTUAL BACKGROUND

S.L., an autistic teenager, visited Berkeley Medical Center ("BMC") on October 12, 2016, seeking medical care for an injury to her foot.  Third Am. Compl. ¶¶ 21, 24, 25.  D.L. informed the nurse at the desk and triage, the attending nurse, and the attending PA-C, defendant Misty Hunsader, that S.L. was autistic and because of S.L.'s disability, S.L. was likely to experience severe anxiety upon seeing needles and while receiving sutures.  *Id.*, 26.

As a result of her autism and related disabilities, S.L. could not tolerate needles, much less the suture procedure, without basic disability accommodations, such as anxiety management and topical anesthetic. Third Am. Compl. ¶¶ 23, 26, 29.   BMC staff refused to provide these accommodations, not because they felt these accommodations would be contraindicated but  they did not wish to spend any additional time on treating S.L.  *Id.*, ¶¶ 39, 40, 41, 42, 43, 44, 45.

When S.L. became distressed and upset at the sight of needles and at the idea of receiving sutures without the accommodations she needed, her mother D.L. withdrew consent for treatment and stated her intent to obtain care at another hospital.  Third Am. Compl. ¶¶ 46, 47.  BMC refused to permit S.L. or her mother to leave and, in cooperation with employees of the ED Defendants, instead sent numerous staff members to forcibly restrain S.L. and administer injectable antipsychotic medications against  S.L.'s will and without her or D.L.'s consent, before ultimately administering sutures to S.L.'s foot.  *Id.*, ¶¶ 48-82.  Due to the contemporaneous statements of BMC staff, S.L. and her mother reasonably believe that BMC's and the Emergency Department's ("ED") actions in

detaining and restraining S.L. were based on discriminatory and stereotypical attitudes toward children with disabilities like S.L., and that a child without disabilities expressing similar distress would not have been forcibly restrained.

## II.   PROCEDURAL HISTORY

On April 22, 2020, D.L. moved this Court for leave to file her Third Amended Complaint adding parties and adding a cause of action under the West Virginia Medical Professional Liability Act, W. Va. Code §§ 55-7B-1 et seq. (Doc 68).   On May 13, 2020, this Court granted that motion (Doc. 73).   The ED Defendants now move to dismiss Plaintiff's First Cause of Action, the Second Cause of Action, and related Fourth Causes of Action, arguing that Plaintiff has failed to state a claim upon which relief can be granted.   As discussed infra, none of these claims have merit. In each case, Defendants are either wrong in their discussion of the law or mistakenly invite the Court to resolve factual disputes on a motion to dismiss.

## III.   APPLICABLE LAW: FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)

At this stage, Plaintiff must merely state facts that give rise to a claim that is "plausible on its face." *Bell Atl. Corp v. Twombly*, 550 U.S. 544, 570 (2007).   For the purposes of a motion to dismiss, courts must accept the allegations in the Complaint as true and must liberally construe the Complaint in favor of the Plaintiff.   *Mylan Labs, Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993). A 12(b)(6) motion to dismiss "is not a procedure for resolving a contest about the facts or the merits of the case," and "must be distinguished from a motion for summary judgment under Federal Rule of Civil Procedure 56, which goes to the merits of the claim and is designed to test whether there is a genuine issue of material fact." *Rich v. Life Ins. Co. of N. Am.*, No. 3:12-CV-92, 2013 U.S. Dist. LEXIS 44601, at *8, 9, 10 (N.D.W. Va March 28, 2013).   Such motions are granted "only in very

limited circumstances." *Rogers v. Jefferson-Pilot Life Ins. Co*., 883 F.2d 324, 325 (4th Cir. 1989). Indeed, "a motion to dismiss for failure to state a claim should not be granted unless it appears certain that the plaintiff can prove no set of facts which would support its claim and would entitle it to relief." *Mylan Labs, Inc*., 7 F.3d at 1134.

## IV.   ARGUMENT

### A.   It Is Premature to Dismiss Plaintiff's ADA Claims Against Defendants Williamson, Smoky Mountain and Alliance  Discovery Is Needed to Confirm Who Owned, Leased, or Operated the Emergency Department During the Events of October 12, 2016

In their motion, ED Defendants argue that  they do not own, lease, or operate Berkeley Medical Center, they cannot be the proper defendants with respect to Plaintiff's ADA claims. Defendants' Mem. in Supp. of Mot. to Dismiss at 4-6.  Based on Defendants' representations with respect to PA-C Hunsader, pursuant to Fed. R. Civ. P. Rule 41(a), Plaintiff will file a formal request to withdraw her Title III claims against this individual defendant, without prejudice.  However, Defendants' argument with respect to Dr. Williamson, Smoky Mountain and Alliance fails  there is a question of fact as to whether these Defendants operated Berkeley Medical Center's ED within the meaning of 42 U.S.C. § 12182(a).  Additionally, this fact is disputed among co-Defendants.  It is therefore premature to dismiss the case before these disputes have been the subject of discovery and/or resolved.

Title III of the ADA states that "[n]o individual shall be discriminated against on the basis of disability … by any person who owns, leases (or leases to), *or operates* a place of public accommodation." 42 U.S.C. § 12182(a) (emphasis added).  A defendant who does not own or lease a property may still be liable under the ADA if it controls the conditions giving rise to

4

discrimination.  *Howe v. Hull*, 873 F. Supp. 72, 77-78 (N.D. Ohio 1994) (finding a physician was liable under ADA when he was the on-call physician and Vice-Chief of Staff with the explicit authority to make discriminatory decisions).  To be liable as an operator under the ADA, all that is necessary is that an entity be empowered to control some policy, practice, or guidance that gives rise to discrimination.  For example, in *Hernandez v. County of Monterey*, although the defendant was an independent contractor who did not own the jail or lease the jail where the discriminatory acts took place, the court found the defendant was the operator of the jail's health care facilities.  70 F. Supp. 3d 963, 976-78 (N.D. Cal. Sept. 29, 2014).  Likewise, in *Bowers v. NCAA*, the defendant NCAA did not own, lease, or occupy the premises of the public accommodation.  9 F. Supp. 2d 460, 465-466 (D.N.J. 1998).  Instead, the defendant promulgated a series of regulations which were binding upon its members.  *Id*. at 466.  Nonetheless, the District Court denied summary judgment the NCAA's regulations and bylaws resulted in discrimination.  *Bowers*, 9 F. Supp. at 486-490.

### 1.     Claims against the Organizational Defendants Smoky Mountain and Alliance.

To establish the Organizational Defendants are proper defendants under the ADA, it is sufficient to establish that they, and/or their predecessors in interest, operated BMC's ED.  The fact that the ED is located within the building that houses BMC does not require a finding that  BMC, rather than the ED defendants, operate the ED.

Plaintiff added the Organizational Defendants to the Third Amended Complaint  she had reason to believe BMC had, at the time of the incident, "contracted out the ED work to Salutis Emergency Specialists, PLLC."  Mem. in Supp. of Third Mot. to Amend at 2-3 (Doc. 68).  The Third Amended Complaint alleges PA-C Hunsader and Dr. Williamson were employed pursuant to a

contract between Salutis and BMC, and the organizational defendants are, to the best of our knowledge, Salutis' successors in interest. *Id.* ¶¶ 13-15. These statements in the pleadings are consistent with the position that the Organizational Defendants, or some of them, operated the ED.

However, there appear to be inconsistencies between the statements of Defendants in this case with respect to who, in fact, was the operator of the ED. Defendant BMC has stated it was not responsible for the actions which occurred in the ED  PA-C Hunsader and Dr. Williamson were "then employed by Salutis Emergency Specialists, PLLC, *with whom BMC contracted to staff the emergency department with physicians and advanced practice providers*." (Emphasis added.) BMC Mem. in Supp. of Motion to Dismiss Third Am. Compl. at 4 (Doc. 81-1). BMC additionally affirms in its Answer that PA-C Hunsader and Dr. Williamson were employed by the ED pursuant to a contract with Salutis, and that claims against Salutis are properly asserted against its successors in interest. Defendant BMC's Answer and Response at ¶¶ 10, 11, 13 (Doc. 80). The Answers of defendants Health Care Alliance and Smoky Mountain affirm that Smoky Mountain  is a successor in interest to Salutis. Answer and Response of Smoky Mountain (Doc. 91) at ¶ 14; Answer and Response of Health Care Alliance (Doc. 89) at ¶ 14.  This position contradicts the current Organizational  Defendants' statement in their Memorandum that none of them currently nor on October 12, 2016, owned, leased, or operated BMC's ED and that they are not and were not "vested with any discretionary authority to act on behalf of the hospital." Defendants' Mem. in Support of Mot. to Dismiss at 4-6. Staffing an emergency department, particularly in the context of providing complex medical care to patients, is tantamount or at least analogous to operating it. In other contexts, defendants have been found to operate a place of public accommodation within the meaning of Title III where there was far less of a direct connection between the defendant and the

6

location.  *See Bowers v. NCAA*, 9 F.  Supp. at 486-490. At the very least, this inconsistency between co-Defendants presents a factual dispute which should be resolved with discovery and not within a Motion to Dismiss.

**2.    Claims against Dr. Williamson**.

At least one court has found, where an individual emergency room doctor has been delegated authority to make decisions on behalf of the emergency department, that the doctor was "operating" a place of public accommodation within the meaning of the ADA.  *See Howe*, 873 F. Supp. at 77-78; *cf. Doe v. Montgomery Hospital*, Civil Action No. 95-3168, 1996 U.S. Dist. LEXIS 18965 * 14-16 (E.D. Pa. Dec. 23, 1996) (finding the individual defendant could not be liable under the ADA  they were staff employees who did not "have the ability to control the actions or shape the policies of Montgomery Hospital").  At this point, Plaintiff has not had the benefit of discovery to determine the extent of Dr. Williamson's authority to operate the Emergency Department because Defendants have not provided Plaintiff with any documentation of the extent of Dr. Williamson's authority. Plaintiffs request the opportunity to proceed to discovery on this question.

It is particularly important that Dr. Williamson remain a defendant in light of the Organizational Defendants' position that Dr. Williamson was an independent contractor.  If the Organizational Defendants exercised so little control over Dr. Williamson that they cannot be held vicariously liable for his acts that violated the ADA, then Plaintiff will be left with no remedy for his discriminatory acts unless she can hold Dr. Williamson individually liable.  It is therefore premature to dismiss Plaintiff's ADA claims against Dr. Williamson.

**B.    Plaintiff has Standing to Seek Injunctive Relief Under the ADA**

In determining whether a plaintiff has standing to seek injunctive relief, a court must examine whether that plaintiff has alleged sufficiently the likelihood of future injury from the defendant. This approach is known as the "*Daniels* principle." The *Daniels* principle states that "when an ADA plaintiff has alleged a past injury at a particular location, his plausible intentions to thereafter return to that location are sufficient to demonstrate the likelihood of future injury." *Nanni v. Aberdeen Marketplace, Inc*., 878 F.3d 447, 455 (4th Cir. 2017) (discussing *Daniels v. Arcade, L.P.*, 477 F. App'x 125, 129-30 (4th Cir. 2012)). *See also Kreisler v. Second Ave. Diner Corp*., 731 F.3d 184, 188 (2d Cir. 2013); *Gaylor v. Hamilton Crossing CMBS*, 582 F. App'x 576, 580 (6th Cir. 2014); *Scherr v. Marriott Int'l, Inc.*, 703 F.3d 1069, 1074 (7th Cir. 2013).

In addition to pleading the past injury Plaintiff suffered at BMC, Plaintiff has alleged a likelihood to return to the ED at BMC in the future. The Third Amended Complaint clearly states BMC is the closest hospital and emergency department to the plaintiff's home and school, meaning in event of emergency, in order to rapidly secure medical care, she is likely to return to BMC in the future. Third Am. Compl. ¶ 93. Of note, in the event of a medical emergency, often a patient does not have the option of selecting the facility at which to receive care because the patient must get care at the closest location or the patient risks complications including death. This reality increases the plausible likelihood S.L. will return to BMC at some point in the future.

The Third Amended Complaint also states that Plaintiff visited the ED before the incident on October 12, 2016, *id*. ¶ 34, and that since the incident, she has already experienced an emergency in which she required the services of the ED, but was unable to return because of concerns relating to the 2016 incident, *id*. ¶¶ 89-92. This subsequent incident does not indicate that S.L. is unlikely

to require the services of the ED in the future.  Rather, it indicates that she has needed the services of the ED, but has continued to be excluded from those services as a result of Defendants' continued failure to revise their policies concerning reasonable accommodations and the use of restraints.

ED Defendants argue S.L. has failed to meet the imminency threshold as described in *Sunderland v. Bethesda Health, Inc.*, 686 Fed. Appx. 807 (2017).  First, as described above, S.L. has discussed sufficiently the imminence of her return to the ED at BMC.  Second, in *Sunderland*, the court was dealing with Defendants' Motion for Summary Judgment, not Defendants' Motion to Dismiss; these are different motions with different standards.  A motion to dismiss is reviewed for whether the plaintiff has stated facts that give rise to a claim that is "plausible on its face."  *Bell Atl. Corp v. Twombly*, 550 U.S. 544, 570 (2007).  Here, S.L. has pled she has used the ED at BMC on several occasions because that ED is closest to her home and school and because she gets injuries requiring treatment at an ED.  On its face, Plaintiff's complaint demonstrates a plausible set of facts that would result in her returning to the ED at BMC.

The ED Defendants also argue S.L. must show more than one past event of discrimination, however, 42 U.S.C. § 12188 eliminates this requirement.  The law  expressly states that  "Nothing in this section shall require a person with a disability to engage in a futile gesture if such person has actual notice that a person or organization covered by this title [42 USCS §§ 12181 et seq.] does not intend to comply with its provisions."  42 USCS § 12188.  S.L. has actual notice BMC and the staff and employees in the ED do not intend to comply with the provisions of the ADA as S.L. was manhandled and forcibly medicated (and thus suffered physical and emotional harm) due to defendants' refusal to supply a reasonable accommodation.  Given her last experience with the ED at BMC and Defendants' continued failure to make meaningful changes to their policies and

practices, S.L. has no reason to believe Defendants will not discriminate against her or deny her a reasonable accommodation if she returns to that ED. The ADA allows a single discriminatory experience to be actionable and the plaintiff has alleged sufficiently in her complaint that Defendants failed to comply with the requirement of the ADA. Further, none of the Defendants have alleged in any pleadings that they intend to make any changes to comply with the ADA in the future.

Further, ED Defendants claim that, because there are other facilities in the area, S.L. lacks standing to request injunctive relief under the ADA. The Fourth Circuit Court of Appeals consistently has disagreed with this argument. In *Nanni v. Aberdeen Marketplace, Inc.*, the availability of alternative rest stops did not preclude the plaintiff from seeking an injunction to use his preferred rest stop. *See Nanni*, 878 F.3d at 456. In *Nanni*, even though Mr. Nanni had his choice of rest stops, the Fourth Circuit found the architectural barriers at Mr. Nanni's preferred rest stop were sufficient to constitute a violation of the ADA. In S.L.'s situation as noted above, she may not always have a choice in medical providers depending on the seriousness of the medical event, thus amplifying the likelihood of her return to defendants' place of business after already having been discriminated against by defendants on another occasion. Nor should she have to avoid the closest, most convenient ED. The availability of alternatives is simply not relevant to the issue of standing. Rather the issue is whether defendants' failure to comply with the ADA caused the injury, which is exactly what S.L. has pled. Indeed, to deny standing in situations where a handful of alternatives exist would undermine Congress's intent to create a "clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities" and to ensure "equal opportunity" and "full participation" to people with disabilities - not merely access to one accessible option. 42 U.S.C. §12101(b).

In assessing a question of standing to sue,  a court is not to be concerned with the merits of a plaintiff's claim.  *See White Tail Park, Inc. v. Stroube*, 413 F.3d 451, 460 (4th Cir. 2005).  Instead, the court must assess "whether [the] plaintiff has a sufficiently personal stake in the lawsuit to justify the invocation of federal court jurisdiction." *Id*. at 461 (internal quotation marks omitted).  S.L. has a sufficiently personal stake in the lawsuit as it is reasonably likely S.L., a person whose disabilities increase her likelihood of injury, will have a medical event requiring emergent medical care.

## V.    PLAINTIFF HAS ADEQUATELY PLED DISCRIMINATION UNDER THE REHABILITATION ACT

ED Defendants argue S.L.'s Rehabilitation Act claim should be dismissed because they did not discriminate "solely" on the basis of disability.  Like BMC's similar argument in its recent motion to dismiss, this argument fails because: 1) it does not accurately reflect the standard for pleading discrimination based on denial of reasonable accommodations; and 2) Plaintiff has adequately pleaded defendants' decision to restrain her and forcibly inject her with antipsychotics was solely based on her disability within the meaning of the Rehabilitation Act.

### 1.    S.L. adequately pleaded discrimination based on failure to provide reasonable accommodations.

In her Third Amended Complaint, Plaintiff articulates multiple grounds for liability under the Rehabilitation Act.  The first ground concerns Defendants' failure to provide reasonable accommodations that were necessary to enable Plaintiff to benefit from medical care and their failure overall to provide S.L. with "an opportunity to participate in or benefit from the aid, benefit, or service that is not equal to that afforded others." Third Am. Compl. ¶¶ 117-18.  The second concerns Defendants' refusal to allow her to leave the ED, their use of restraints, and their forcible injection of medications. *Id*. ¶¶ 119-20.  Plaintiff has stated claims under both these theories of liability.

**B.** **Plaintiff Need Not Address Defendants' Motivation for Failing to Provide Reasonable Accommodations**

Although ED Defendants argue Plaintiff has failed to assert their failure to provide her with reasonable accommodations was itself caused solely by Plaintiff's disability, no court has required such as showing. Rather, when a plaintiff requires a reasonable accommodation because of her disability and is denied that accommodation, this automatically constitutes discrimination under the Rehabilitation Act unless the defendant is able to claim a recognized exemption, such as fundamental alteration. Because S.L. has adequately pleaded that she required a reasonable accommodation, that she notified ED Defendants of her need for a reasonable accommodation, and that ED Defendants denied her the accommodation, she has met her burden of pleading at this stage.

Section 504 requires reasonable accommodations where necessary to ensure that people with disabilities receive benefits that are "equal to that afforded others." 45 C.F.R. § 84.4(b)(ii). To establish a prima facie case for denial of reasonable accommodations, after establishing that she is a qualified individual with a disability, a plaintiff need only allege: 1) "a requested modification is 'necessary' for the disabled individual;" and 2) the requested modification is "reasonable." It is then Defendants' burden to show the requested modification "would 'fundamentally alter the nature' of the public accommodation." *J.D. v. Colonial Williamsburg Found*., 925 F.3d 663, 671, 669 n.6 (4th Cir. 2019) (noting that the ADA and Rehabilitation Act standards for reasonable accommodation claims are identical and addressing them together).

When a covered entity fails to provide necessary reasonable accommodations to a person with a disability, "the cause of that failure is irrelevant." *Bennett-Nelson v. La. Bd. Of Regents*, 431 F.3d 448, 454-455 (5th Cir. 2005). *See also Henrietta D. v. Bloomberg*, 331 F.3d 261, 273 (2d Cir.

2003) (declining to interpret Rehabilitation Act's causation standard "so narrowly that they deprive the plaintiffs of reasonable accommodations"); *Falls v. Prince George's Hosp. Ctr.*, Civ. Action No. 97-1545, 1999 U.S. Dist. LEXIS 22551, at *27 (D. Md. Mar. 16, 1999) (denial of an interpreter constituted intentional discrimination even if motivated by "thoughtlessness and indifference" rather than hostility).  Therefore, failure to make a reasonable accommodation will violate Section 504 regardless of the defendant's subjective motivations for doing so.

ED Defendants' citations do not support their contention that Plaintiff must claim that the denial of a reasonable accommodation was itself somehow motivated by Plaintiff's disability.  *See, e.g., Freilich v. Upper Chesapeake Health, Inc*., 313 F.3d 205, 215-217 (4th Cir. 2002) (dismissing Rehabilitation Act claims based on standing, rather than the causation standard); *Ennis v. Nat'l Ass'n of Bus. & Educ. Radio, Inc*., 53 F.3d 55, 57-58 (4th Cir. 1995) (finding, in a matter that did not concern reasonable accommodations, "no reason to distinguish" between the causation standards in the ADA and Rehabilitation Act in cases where a defendant "disavows any reliance on discriminatory reasons" for adverse actions); *Lindstrom v. St. Joseph's Sch. for the Blind, Inc*., No. CV 15-8084, 2016 U.S. Dist. LEXIS 135551 *14 (D.N.J. Sept. 30, 2016) (rejecting the plaintiff's Section 504 claim, in a case that did not involve reasonable accommodations, because he had failed to allege any causal connection between his disability and his school's failure to contain a bed bug outbreak); *J.D. v. Kanawha Cty. Bd. of Educ*., No. 2:06-cv-00167, 2008 U.S. Dist. LEXIS 124043, at *8 (S.D. W. Va. Jan. 11, 2008) (dismissing Rehabilitation Act claim because the complaint "lacks an allegation that J.D. was denied a right or discriminated against because of his disability"); *Ganzzermiller v. Univ. of Maryland Upper Chesapeake Med. Ctr*., No. CV CCB-16-3696, 2019 U.S. Dist. LEXIS 169559, at *11-13 (D. Md. Sept. 30, 2019) (denying the hospital's motion for summary

judgment on the plaintiff's Rehabilitation Act claim when the hospital had failed to provide an ASL interpreter, without any inquiry into the reasons for the hospital's choice to deny an interpreter); *Baird ex rel. Baird v. Rose*, 192 F.3d 462, 469 (4th Cir. 1999) (addressing a facial discrimination claim solely under the ADA, with no opportunity to address whether the complaint would have satisfied the Rehabilitation Act's causation standard).

S.L. adequately pleaded that she needed an accommodation to benefit from treatment for her injuries, the accommodation she requested was reasonable, and ED Defendants denied her that accommodation.  Third Am. Compl. ¶¶ 29-31, 31-38, 39, 40, 42-45.  This part of the complaint is sufficient to constitute a prima facie case of discrimination under the Rehabilitation Act.

### C.      Reasonable Accommodations May Include Provision of Medical Services

ED Defendants also argue that, because S.L.'s proposed reasonable accommodation included medication, oral Ativan and topical Lidocaine, she could not be entitled to that accommodation as a matter of law.   To the contrary, reasonable accommodations can include accommodations necessary to meet an individual's medical needs.  *See United States v. Georgia*, 546 U.S. 151, 157 (2006) (failure to accommodate prisoner's medical needs may have violated ADA); *Bryant v. Madigan*, 84 F.3d 246, 249 (7th Cir. 1996) ("Standards of medical care are not irrelevant" to the ADA, as failure to accommodate medical needs can result in exclusion from programs or activities); *Henrietta D. v. Bloomberg*, 331 F.3d 261, 283 (2d Cir. 2003) (medical services such as "intensive case management" may be reasonable accommodations); *Taylor v. Richmond State Living Center*, 2012 U.S. Dist. LEXIS 170190 *16-17 (S.D. Tx., November 30, 2012) (plaintiffs stated an ADA claim against a state supported living center by alleging the center had failed to provide treatment,

14

services, nursing, and medical care "commensurate with [plaintiffs'] unique and individualized needs.").

In *Fitzgerald v. Corrections Corporation of America*, which ED Defendants cite in support of their position, the court held a hospital was not discriminating "solely by reason of disability" when the "alleged disability in this case was the reason why Fitzgerald was seeking medical treatment." 403 F.3d 1134, 1144 (10th Cir. 2005); *see also Johnson by Johnson v. Thompson*, 971 F.2d 1487, 1493-94 (10th Cir. 1992) (hospital's failure to provide aggressive treatment for spina bifida did not constitute discrimination based solely on disability, because the disability was the condition that was to be treated). As Plaintiff noted in her Opposition to defendant BMC's Motion to Dismiss (Doc. 81), the accommodations S.L. requested were related to her autism and anxiety, which were not the reason why S.L. was seeking medical treatment. Rather, the accommodations were necessary in order for her to benefit equally from treatment for her injuries as a similarly situated person without a disability would. Pl.'s Opp. to BMC Mot. to Dismiss at 11 (Doc. 22); Order Granting Motion to Dismiss In Part at 10-11 (Doc. 26) (finding S.L.'s "allegations are more than claims of inadequate medical care.").

To the extent ED Defendants argue their decision not to provide S.L.'s requested accommodation was a "medical judgment," this argument directly contradicts the facts set forth in the Third Amended Complaint. At no point did any individual tell S.L. or her mother that the requested accommodations were medically contraindicated, nor were they. Third Am. Compl. ¶¶ 30, 42. Rather, a nurse merely stated she did not want to take the time to provide the accommodation - despite the fact that S.L. had already been waiting for over two hours and clearly was not in such urgent need of care that the extra time to provide the accommodation would have

15

adversely affected her health.  *Id.* ¶¶ 40-41.  If ED Defendants wish to claim their conduct stemmed from medical judgment, then they are free to present testimony to that effect during discovery.

> **D.    The Adequacy of Alternate "Accommodations" Is a Factual Question That Cannot Be Resolved at the Pleading Stage**

Defendants argue that their forcible use of physical restraint and sedatives was an alternate accommodation for S.L.'s disability.  This argument fails because the  Court cannot determine at the pleading stage whether this alternate "accommodation" was effective at affording equal access, particularly in light of S.L.'s claims that Defendants' caused her severe harm.

Under the law, a covered entity may offer a different reasonable accommodation than the one requested only if the alternate accommodation would also "afford handicapped persons equal opportunity to obtain the same result, to gain the same benefit, or to reach the same level of achievement, in the most integrated setting appropriate to the person's needs."  45 C.F.R. § 84.4(b)(2); *see also J.D.*, 95 F.3d at 673 (where a covered entity offers a different accommodation from the one requested, "a plaintiff may still be entitled to something more if he can show that the accommodation does not account sufficiently for his disability"); *Juech v. Children's Hosp. & Health Sys., Inc.*, 353 F. Supp. 3d 772, 777 (E.D. Wis. 2018) (noting that an alternate communication aid was acceptable because it enabled the patient to communicate effectively); *Biondo v. Kaleida Health*, 935 F.3d 68, 74 (2d Cir. 2019) (vacating and remanding *Biondo v. Kaleida Health*, No. 15-CV-362-FPG-LGF, 2018 U.S. Dist. LEXIS 60789 (W.D.N.Y. Apr. 10, 2018), which ED Defendants cited in their brief, and ruling a reasonable jury could find an alternate accommodation was not effective). Whether a proposed alternate accommodation is actually effective at ensuring access is a question of fact.  *See J.D. v. Colonial Williamsburg Found.*, 925 F.3d 663, 674 (4th Cir.

2019) ("Until a jury resolves the disputes surrounding the nature and extent of J.D.'s disability, we cannot determine if the accommodation Shields Tavern offered, as good as it may be, fully accounted for his disability.").  Thus, the issue cannot be determined on a motion to dismiss.

Plaintiff's Third Amended Complaint clearly states ED Defendants proposed no alternative accommodation that would have ensured her equal access to their services.  Third Am. Compl. ¶ 45. Nor did they have any medical justification for denying the accommodation S.L. requested.  *Id*. ¶¶ 40-44.  S.L. has further pleaded that ED Defendants' forcible use of restraint and forcible injection of medications was not only an ineffective alternate accommodation, but that it actively denied her the right "to receive a benefit from BMC's services that is equal to that afforded to other individuals."   Third Am. Comp. at ¶¶ 119-120.   This is because these measures caused her significant physical and emotional harm that would not have occurred if any of the Defendants had provided her with the actually effective accommodations that her mother requested.  *Id*. ¶¶ 84-88. These measures were not merely something offered to Plaintiff as an alternate accommodation but were something forced on her against her will, despite her guardian's stated withdrawal of consent to treatment and intent to seek treatment elsewhere.  If ED Defendants intend to dispute the facts set forth in the Third Amended Complaint, they  must do so by presenting contradictory evidence in the discovery process and, later, at trial.

### E.   S.L. Adequately Pleaded Discrimination Based on the Discriminatory Decision to Restrain Her and Forcibly Inject Her with Antipsychotics

Plaintiff has set forth adequate facts to establish a prima facie case of discrimination arising from ED Defendants' failure to allow her to leave, their use of restraints, and their forcible administration of medications.  ED Defendants' conduct violated the Rehabilitation Act because 1)

it was a required and natural consequence of ED Defendants' failure to provide S.L. a reasonable accommodation and 2) ED Defendants would not have responded forcibly to a similarly situated, nondisabled teenager who wished to leave the hospital.

      **1.**    **ED Defendants would not have forcefully restrained S.L. if they had provided her with the accommodations she requested.**

As the Third Amended Complaint explains, S.L. became upset and attempted to leave the treatment room solely because she was afraid of the needles and of receiving sutures without reasonable accommodations for her anxiety.  Third Am. Compl.  ¶¶ 46-50.  ED Defendants do not argue that they would have restrained S.L. or forcibly administered medications even if she had not become upset and attempted to leave.  The harms associated with ED Defendants' restraint and forcible use of medications are therefore the direct result of ED Defendants' failure to provide her with a reasonable accommodation.  As noted above, S.L. has adequately pled her entitlement to reasonable accommodations for her anxiety and autism.  Therefore, ED Defendants are liable for damages associated with their forcible use of restraint and forcible administration of medication.

      **2.**    **ED Defendants' conduct was based solely on S.L.'s disability.**

ED Defendants also are separately liable for damages associated with their forcible use of restraint, refusal to allow S.L. to seek treatment elsewhere, and forcible administration of antipsychotics because their response to S.L.'s distress was itself solely based on her disability.

The facts set forth in the Third Amended Complaint give rise to a reasonable inference that, if S.L. had not been disabled, she would not have been restrained or forcibly injected with antipsychotics.  Rather, ED Defendants refused to allow S.L. to leave, restrained her, and forcibly administered medications solely based on stereotypes of people with S.L.'s disabilities as aggressive,

dangerous, and disruptive.  *See* Third Am. Compl. ¶ 49 (S.L. was not a danger to self or others);  ¶¶ 58, 59 (Defendants inaccurately referred to S.L. as "psychotic"); ¶ 73 (restraints and medications were not medically necessary.)

Moreover, when a discrimination claim arises from abuse or inappropriate use of restraint, a plaintiff may show the discrimination was based "solely" on disability even if the plaintiff's disability-related behavior was a precipitating event. *See Taylor v. Richmond State Supported Living Ctr.*, No. 4:11-3740, 2012 U.S. Dist. LEXIS 170190, at *15 (S.D. Tex. Nov. 30, 2012) (estate had stated a claim for liability when it alleged that the defendant's staff had targeted the man for abuse as a result of his "profound and unusual disabilities, such as his oppositional behaviors"); *K.T. v. Pittsburg Unified Sch. Dist.*, 219 F. Supp. 3d 970, 981 (N.D. Cal. 2016) (abuse of the plaintiff that was prompted by manifestation of disability "is enough to satisfy even the Rehabilitation Act's heightened causation standard.").

Finally, a plaintiff need not prove discriminatory animus or hostility in order to establish that the discrimination was based solely on disability.  Rather, disability discrimination may be based on a "mistaken, restrictive belief as to the limitations of handicapped persons" or even a desire to extend a "helping hand."  *Pushkin v. Regents of University of Colo.*, 658 F.2d 1372, 1385 (10th Cir. 1981); *see also Liese v. Indian River County Hosp. District*, 701 F. 3d 334, 344-348 (11th Cir. 2012).  This could include, for example, a discriminatory belief that a disabled person in distress is automatically a threat and warrants forcible application of restraint and sedatives.

In contrast, decisions finding that conduct was not "solely" based on disability tend to focus on considerations wholly unrelated to a plaintiff's disability.  *See, e.g.*, *Johnson by Johnson v. Thompson*, 971 F.2d 1487, 1493 (10th Cir. 1992) (where plaintiffs alleged hospital made treatment

recommendations based on socioeconomic status, this was not discrimination "solely" based on disability).

ED Defendants further argue their discriminatory conduct was based not on Plaintiff's disability, but on bona fide medical judgment.  ED Defendants' Memorandum in Support of Motion to Dismiss at 10 (Doc. 95-1).  Once Plaintiff has set forth facts that give rise to a reasonable inference of discrimination, ED Defendants have the burden of articulating a nondiscriminatory basis for their conduct.  *Ennis v. Nat'l Ass'n of Bus. & Educ. Radio, Inc.*, 53 F.3d 55, 58 (4th Cir. 1995) (adopting the *McDonnell-Douglas* framework for both ADA and Rehabilitation Act claims); *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, (1973).  When a defendant alleges a nondiscriminatory basis for its actions, a plaintiff must "must be given a full and fair opportunity to demonstrate by competent evidence that the presumptively valid reasons for [defendant's conduct] were in fact a coverup for a . . . discriminatory decision."  *See McDonnell-Douglas*, 411 U.S. at 805 (addressing racial discrimination).  Thus, to the extent the ED Defendants claim their conduct was based on a nondiscriminatory medical judgment, the resolution of that claim  is a matter for summary judgment or trial, not a matter for a motion to dismiss.

The decision in *Bartlett*, which ED Defendants cite in support of their argument, did not concern liability for discriminatory treatment decisions but rather the medical standard of proof that an individual has a disability within the meaning of the ADA and Rehabilitation Act; ED Defendants have not challenged S.L.'s status as a person with a disability in their Motion to Dismiss.  Moreover, with respect to clinical judgment, the *Bartlett* court merely noted that, at the summary judgment stage, a court may require the testimony of a clinician on matters relating to the effects of an individual's disability.  This does not mean the court must accept, at the pleading stage, that a

defendant's claim to have based its decision on "clinical judgment" must always be accepted as a matter of law.

Defendants' citation of *Aikins* also is puzzling.  In *Aikins*, a hospital claimed that, because it did not have to obtain the patient's deaf wife's consent to emergency treatment, she was not a "qualified individual" and therefore, it did not have to provide effective communication to her. *Aikins*, 843 F. Supp. at 1337.  The court in *Aikins* rejected that argument at the summary judgment stage, noting evidence that in fact no emergency existed. *Id*. at 1338.  In the present case, the facts set forth in the Third Amended Complaint directly contradict ED Defendants' apparent suggestion that a sufficient emergency existed such that they were entitled to ignore  S.L.'s request for an accommodation, to ignore D.L.'s withdrawal of consent, or to restrain S.L.  *See* Third Am. Compl. ¶¶ 41, 49 (S.L. was waiting for two hours; S.L. was not a danger to self or others, etc.).

Finally, ED Defendants cite *Ervin v. Corizon Health*, Civil Action No. ELH-19-1666, 2020 U.S. Dist. LEXIS 85229, at *51 (D. Md. May 13, 2020).  This case concerned Eighth Amendment claims against doctors, not Rehabilitation Act claims; the plaintiff had not asserted any disability discrimination claims related to his healthcare. Although the court ruled, with respect to the Eighth Amendment claim, that "mere disagreement" with a provider's course of treatment was insufficient to establish liability under the Eighth Amendment, it did so on a motion for summary judgment, after the parties had the opportunity to present evidence or request further discovery on the basis for the medical decision at issue. *Id*. *35-36.

S.L. adequately pleaded that ED Defendants' conduct in refusing to allow her to leave, restraining her, and forcibly medicating her constituted disability-based discrimination.  "Whether the Defendant's decisions were 'reasoned medical judgment[s]' or motivated by discrimination are

21

questions of fact" that cannot be resolved at the pleading stage.  Order Granting Motion to Dismiss In Part at 12 (Doc. 26).

## VI.    CONCLUSION

For the reasons stated above, this Honorable Court should deny Defendants' Motion to Dismiss, grant Plaintiff's Motion to her ADA claim in the First Cause of Action against Misty Hunsader without prejudice, and allow Plaintiff to move forward with discovery on all causes of action.

PLAINTIFF,
BY COUNSEL

/s/ *Allan N. Karlin*
ALLAN N. KARLIN, WV BAR # 1953
JANE E. PEAK, WV BAR #7213
ALLAN N. KARLIN & ASSOCIATES PLLC
174 CHANCERY ROW
MORGANTOWN, WV 26505
304-296-8266

/s/ *Samantha Crane*
SAMANTHA CRANE, DC BAR # 1000447
AUTISTIC SELF ADVOCACY NETWORK
1010 VERMONT AVENUE, STE 618
WASHINGTON, DC 20005

/s/ *Shawna White*
SHAWNA WHITE, WV BAR # 10893
DISABILITY RIGHTS OF WEST VIRGINIA
1207 QUARRIER STREET
CHARLESTON, WV 25301

## **CERTIFICATE OF SERVICE**

      I, Allan N. Karlin, do hereby certify that on July 17, 2020, I electronically filed, via the CM/ECF system, the "Plaintiff's Response Memorandum in Opposition to Defendants Misty Hunsader, PA-C, Brandt Williamson, M.D., Smoky Mountain Emergency Services, Inc. and Health Care Alliance, Inc.'s Motion to Dismiss" which will send notification to the following:

Joshua K. Boggs (WV Bar # 10096)
Christine S. Vaglienti (WV Bar # 4987)
Lauren T. Krupica (WV Bar # 11719)
West Virginia United Health System, Inc.
1238 Suncrest Towne Centre Drive
Morgantown, WV 26505
304-598-9888

Tamela White, Esq.
Farrell White & Legg
914 Fifth Avenue
PO Box 6457
Huntington, WV 25772-6457


PLAINTIFF,
BY COUNSEL.


/s/ *Allan N. Karlin*
ALLAN N. KARLIN, WV BAR # 1953
JANE E. PEAK, WV BAR #7213
ALLAN N. KARLIN & ASSOCIATES PLLC
174 CHANCERY ROW
MORGANTOWN, WV 26505
PH: 304-296-8266
FAX: 304-296-8640
ank@wvjustice.com
jep@wvjustice.com